RONALD M. SELBY, Plaintiff-Appellant, v. DANVILLE PEPSI-COLA BOTTLING COMPANY, INC., Defendant-Appellee.

Fourth District No. 4—87—0517

Opinion filed May 12, 1988.

Zimmerly, Gadau, Selin & Otto, of Champaign, for appellant.

Hugh C. Griffin, Ann Marie Walsh, and Diane I. Jennings, all of Lord, Bissell & Brook, of Chicago, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

Plaintiff slipped and fell on a sloped, icy parking lot at defendant's plant as he was unloading liquid sugar. At the close of the evidence, the trial court allowed defendant's motion to strike various portions of plaintiff's complaint for failure to state a cause of action. The cause was submitted to the jury on the issue of whether defendant had created an unnatural accumulation of ice where plaintiff fell. The jury found for defendant. Plaintiff appeals arguing the trial court erred in striking portions of his complaint and in refusing to instruct the jury on the stricken allegations; in instructing the jury on proximate cause; and in allowing improper cross-examination. Plaintiff also argues miscellaneous trial errors deprived him of a fair trial.

We affirm.

Pearley Keller, defendant's warehouse manager and former plant manager, stated that on January 10, 1984, he was in charge of production, building maintenance, and ordering liquid sugar. Part of his job was to make sure the exterior walking surfaces were safe. The Danville plant has an asphalt-covered parking lot to the south of the building. A fence runs along the west end of the lot. The sugar delivery area is at the southwest end of the building, east of the fence. It contains two doors, four feet from the ground, with pipes to receive

liquid sugar. The employee entrance to the plant is approximately 20 feet from the sugar doors. A small, six-inch drain is situated directly south of the sugar delivery area in a concrete pad. The parking lot slopes from the building to the small drain. A larger storm drain is located 40 feet south of the small drain. The lot slopes to that drain as well. Keller described the slope as "more than a slight slope." Dr. Roger Brauer, plaintiff's safety expert, stated the slope in the area where plaintiff fell was from one to six degrees. The high point of the slope is at the building.

Melting snow piled along the fence would not drain into the work area. Melting snow piled against the building would drain down the slope and into the sugar delivery area.

Keller testified that he expected a delivery on January 10, 1984. It was defendant's policy to remove snow from the sugar delivery area. Keller could not remember the last date prior to January 10, 1984, when snow had been removed from the area. Usually, he would plow the snow to an area along the fence where it would melt into the drain. He did not plow snow up to the building. Another of defendant's employees testified that defendant did not pile snow up against the building but placed it along the fence. Keller could not remember the placement of snow on January 10, 1984.

He placed sand in the sugar delivery area on the day before plaintiff's accident. However, freezing rain covered the sand. Weather reports show that on January 9, 1984, Danville had freezing rain for several hours between the early afternoon and evening. The high temperature for the day was 36 degrees, and the low temperature for the day was 24 degrees. The high temperature for January 10, 1984, was 32 degrees and the low temperature was 11 degrees. One of the exhibits showed freezing rain on both January 9, 1984, and January 10, 1984. The temperature did not rise above freezing prior to plaintiff's fall on January 10, 1984.

Plaintiff arrived at the Danville plant at approximately 7:15 a.m. The temperature was below freezing, but it was not snowing or raining. There was ice and snow on the sides of the road, but the roads in Danville were clear. Plaintiff stated that when he entered the lot, he noticed patches of ice on the driveway and spotty sheets of ice in the parking lot. At one point, as he was turning his truck, he lost traction because of the ice. One of defendant's employees moved his vehicle from the sugar unloading doors and motioned to plaintiff to watch his step.

Plaintiff stated snow had been plowed up against the building. The snow came out two to three feet from the building all along the

south side until it reached the sugar delivery area. It was stacked up to approximately a foot beneath the doors. The snow came out five feet into the lot itself, forming a bay area around the sugar delivery doors. Plaintiff stated there was a patch of ice precisely where he had to remove the hoses from the truck. It ran unbroken from the edge of the snow down the slope. It was "black ice," clear to the asphalt. He could not see any sand in it. The slope was similar to a wheelchair ramp. Plaintiff hooked up the first hose but was sliding on the ice. As he was pulling the second hose out of the truck, he lost his footing and fell, breaking his right leg. Ambulance personnel and several of defendant's employees had to carry him over snowbanks to put him in the ambulance. Plaintiff admitted that in 1986 he applied for and was hired by Mercer Trucking. He worked for three weeks, then quit.

Several witnesses testified that the Danville area was snow-covered and icy on January 10, 1984. The ambulance attendants stated the roads were clear but the area in which plaintiff fell was ice-covered. The trip report for the ambulance indicated the road conditions were icy. The ambulance attendants did not remember lifting plaintiff over snow. They did remember people helping lift plaintiff into the ambulance, because of the ice, which made footing uncertain, and plaintiff's size. No witness, other than plaintiff, could remember snowbanks in the area. One of defendant's employees remembered snow along the fence.

Roger Brauer, a safety engineer with his doctorate, stated that as a safety engineer, he believed the slope was defective because it was ice-covered and pushing and pulling activity was conducted on it. The ice prevented traction. Therefore, given the combination of ice, work conducted, and slope, the work area was defective. Brauer believed the icy lot was hazardous, defendant knew it was hazardous, and failed to adequately remove snow from the area. Asphalt contributed to the freeze-thaw cycle because it absorbs heat well but dissipates it quickly. Therefore, snow at the top of the slope would melt resulting in a freeze of runoff water on the slope. The temperature was above freezing the day previous to plaintiff's fall. This could have caused thawing.

Brauer believed defendant deviated from safety standards by permitting sugar delivery on January 10, 1984, prior to correcting the problem. He admitted, however, that no written safety standard, building code or otherwise, was violated by the slope. Nothing about the design or construction of the area violated any written code. Standards for parking lots were met by the defendant. Brauer did not know of any written standards which were violated by the asphalt

parking lot or work area. He was not aware of any written standard on snow removal.

Brauer further stated that melting snow piled along the fence would not drain into the area where plaintiff fell. The ice upon which plaintiff fell was either caused by freezing rain or thawing snow. Brauer conceded that the only source would be freezing rain if all of the snow had been pushed to the fence.

■■■ Initially, plaintiff argues his amended complaint sufficiently alleged the sloped parking lot was defective in nature or design. Since a landowner may be liable for injuries caused by a defectively designed area which is aggravated by a natural condition, plaintiff argues the court erred in dismissing his allegations for failure to state a cause of action. In considering the propriety of a dismissal for failure to state a cause of action, all well-pleaded facts in a complaint and reasonable inferences from them must be taken as true. (*Wolcowicz v. Intercraft Industries Corp.* (1985), 133 Ill. App. 3d 157, 478 N.E.2d 1039.) The complaint must set out facts which establish the existence of a duty by defendant to plaintiff, breach of that duty, and proximately resulting injury. (*Teter v. Clemens* (1986), 112 Ill. 2d 252, 492 N.E.2d 1340.) Fact pleading is required. Therefore, plaintiff must allege facts which are sufficient to bring his claim within a recognized cause action. (*Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 513 N.E.2d 387; *Teter*, 112 Ill. 2d at 256, 492 N.E.2d at 1342.) Although complaints should be liberally construed, plaintiff still has an obligation to set out facts necessary for recovery under the theory asserted in his complaint. *Kirk*, 117 Ill. 2d 507, 513 N.E.2d 387.

■■ Initially, it should be noted that plaintiff's complaint is conclusory in nature. In subparagraph 6(A), plaintiff asserts the "slippery sloped walking surface" was a patent defect. In subparagraph 6(B), plaintiff alleges defendant violated its duty to warn plaintiff of the slippery nature of the walking surface. In subparagraph 6(C), plaintiff alleges the "defective walking surface" was unreasonably dangerous when ice-covered. Plaintiff does not allege any facts to support his conclusion of a defective slope. Fact pleading is required in Illinois. *Teter*, 112 Ill. 2d 252, 492 N.E.2d 1340.

■■ A landowner has a general duty to exercise ordinary care to ensure his premises are reasonably safe. (*Fravel v. Morenz* (1986), 151 Ill. App. 3d 42, 502 N.E.2d 480; *Sepesy v. Fuller* (1978), 59 Ill. App. 3d 56, 375 N.E.2d 180.) However, in Illinois a landowner has no duty to remove or take other precautions against the dangers inherent in natural accumulations of ice or snow. *Smalling v. La Salle National*

*Bank* (1982), 104 Ill. App. 3d 894, 433 N.E.2d 713.

■■ Nevertheless, liability will be imposed where the injury occurred as a result of snow or ice produced, accumulated in an unnatural way, or aggravated by artificial causes. (*Smalling*, 104 Ill. App. 3d 894, 433 N.E.2d 713; *Hankla v. Burger Chef Systems, Inc.* (1981), 93 Ill. App. 3d 909, 418 N.E.2d 35.) Therefore, if a sloped surface causes an unnatural accumulation of ice, defendant may be responsible for the resultant injury. (*McCann v. Bethesda Hospital* (1979), 80 Ill. App. 3d 544, 400 N.E.2d 16; *Fitzsimons v. National Tea Co.* (1961), 29 Ill. App. 2d 306, 173 N.E.2d 534.) No liability will be imposed simply because plaintiff fell on an inclined surface covered with a natural accumulation of ice or snow. (*Smalling*, 104 Ill. App. 3d 894, 433 N.E.2d 713; *Greenwood v. Leu* (1973), 14 Ill. App. 3d 11, 302 N.E.2d 359; *Davis v. City of Chicago* (1972), 8 Ill. App. 3d 94, 97, 289 N.E.2d 250, 252.) When one alleges a slope creates an unnatural accumulation of ice, one must present evidence of the dangerous nature of the slope, that the slope proximately caused the injury, and that the landowner knew of the defect. (*McCann*, 80 Ill. App. 3d 544, 400 N.E.2d 16.) A landowner may also be liable for injuries caused by design defects. *Sepesy*, 59 Ill. App. 3d 56, 375 N.E.2d 180; *McGourty v. Chiapetti* (1962), 38 Ill. App. 2d 165, 186 N.E.2d 102; *Stroyeck v. A. E. Staley Manufacturing Co.* (1960), 26 Ill. App. 2d 76, 167 N.E.2d 689.

■■ All of plaintiff's allegations center around the dangerousness of the area when ice-covered. Therefore, this is not a general premises liability case but an ice and snow case. The trial court correctly concluded the duties applicable to ice and snow cases apply. Subparagraphs 6(A), (B), (C), and (F) do not state a cause of action. Plaintiff did not allege that the slope aggravated or caused an unnatural accumulation of ice or snow. Additionally, there is no duty to warn of a natural accumulation. Merely alleging that a slope existed in an area where a person fell is insufficient to impose liability. *Smalling*, 104 Ill. App. 3d 894, 433 N.E.2d 713.

■■ Here, it should be noted that even plaintiff's expert said there was nothing wrong with the slope or area in itself. Only when combined with the ice and the type of work did he feel a violation of safety standards occurred. Plaintiff in essence asked this court to impose a duty to guard against the dangers of a nondefective slope when that slope is covered by natural ice or snow. This is contrary to Illinois law. The trial court correctly found plaintiff's complaint failed to state a cause of action based upon a design defect in the nature of the slope.

■■ Plaintiff next argues his complaint contained a legally sufficient allegation that the parking lot was unreasonably dangerous as

constructed when covered by ice. If the walking surface becomes unusually or unreasonably dangerous because of the nature of its construction or the materials used in constructing it, liability may be imposed upon a landowner. (*Murphy v. Messerschmidt* (1977), 68 Ill. 2d 79, 368 N.E.2d 1299; *Fanning v. Lemay* (1966), 78 Ill. App. 2d 166, 222 N.E.2d 815, *rev'd on other grounds* (1967), 38 Ill. 2d 209, 230 N.E.2d 182; *Sommese v. Maling Brothers, Inc.* (1966), 36 Ill. 2d 263, 222 N.E.2d 468.) In the instant case, plaintiff did not allege that any defective construction material was used in constructing the parking lot. He did not allege the parking lot became more dangerous than a different type of lot would be when ice-covered. Additionally, plaintiff did not allege the lot was more dangerous because of the material used in constructing it. The trial court correctly found plaintiff's complaint failed to state a cause of action.

 Plaintiff next asserts the court erred in striking his allegation that defendant was negligent in failing to follow its own safety procedures on the date in question. Although a landowner is under no duty to remove natural accumulations of ice or snow (*Hankla*, 93 Ill. App. 3d 909, 418 N.E.2d 35), where a landowner negligently performs ice and snow removal, adding to or creating a new hazard, he may be liable for resulting injury. (*Erasmus v. Chicago Housing Authority* (1980), 86 Ill. App. 3d 142, 407 N.E.2d 1031; *Cupp v. Nelson* (1972), 5 Ill. App. 3d 37, 282 N.E.2d 513; *Sims v. Block* (1968), 94 Ill. App. 2d 215, 236 N.E.2d 572.) However, a gratuitous performance of snow or ice removal does not create a continuing duty to do so. (*Burke v. City of Chicago* (1987), 160 Ill. App. 3d 953, 513 N.E.2d 984; *Chisolm v. Stephens* (1977), 47 Ill. App. 3d 999, 365 N.E.2d 80.) Plaintiff's allegation sought to impose a duty to continue snow or ice removal. There is no continuing duty under Illinois law. Therefore, the trial court correctly struck this allegation.

 Plaintiff next argues the trial court erred in refusing to instruct the jury on the stricken allegations. As was noted in *Fravel v. Morenz* (1986), 151 Ill. App. 3d 42, 45, 502 N.E.2d 480, 482-83, the purpose of jury instructions is to convey to the minds of the jurors the correct principles of law applicable to the evidence before them. The instructions must state the law fairly and distinctly without misleading the jury or prejudicing a party. The trial court correctly refused to instruct the jury on the stricken allegations.

 Plaintiff next argues the trial court erred instructing the jury on proximate cause. Plaintiff submitted the following instruction:

"When I use the expression proximate cause, I mean any cause which, in the natural or probable sequence, produced the

injury complained of. It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury."

The court gave only the first sentence of the instruction. This was not error. No legally concurrent cause was shown by the evidence in this case. A plaintiff in an ice and snow case has the duty to show the ice or snow was an unnatural condition. A natural accumulation is not the basis for liability. A concurrent cause is by definition a negligent action, which when combined with another negligent action, causes the injury, which would not have occurred absent either. (*Naslund v. Watts* (1967), 80 Ill. App. 2d 464, 224 N.E.2d 474.) Natural freezing rain could not be termed a concurrent cause.

 Plaintiff next argues the trial court allowed improper cross-examination of witnesses. Plaintiff asserts the trial court abused its discretion in allowing defense counsel to ask plaintiff's expert whether he was aware of the legal duty of a landowner or how his opinion related to it. Statutory interpretation is not a matter upon which an expert is competent to testify. (*Christou v. Arlington Park-Washington Park Race Tracks Corp.* (1982), 104 Ill. App. 3d 257, 432 N.E.2d 920.) However, wide discretion is allowed in examining an expert to establish the basis of his opinions. The scope of the questioning is within the trial court's discretion. *Lebrecht v. Tuli* (1985), 130 Ill. App. 3d 457, 473 N.E.2d 1322; *Darling v. Charleston Community Memorial Hospital* (1964), 50 Ill. App. 2d 253, 200 N.E.2d 149, *aff'd* (1965), 33 Ill. 2d 326, 211 N.E.2d 253, *cert. denied* (1966), 383 U.S. 946, 16 L. Ed. 2d 209, 86 S. Ct. 1203.

In the instant case, defense counsel sought to establish whether plaintiff's expert was aware of or had considered a landowner's duty under State law when he concluded defendant violated industrial safety standards. Defendant did not ask plaintiff's expert to interpret Illinois law. *Christou* is, therefore, distinguishable. The examination was proper. It involved the basis of the expert's opinion, which was an issue in the case; therefore, no error occurred.

 Plaintiff also argues prejudicial error occurred in re–cross-examination of his expert because a question on bias exceeded the scope of redirect examination. On re–cross-examination, defense counsel asked plaintiff's expert whether he had consulted with plaintiff's attorney on prior matters. Plaintiff's contention that this was prejudicial error is meritless. Examination to show an expert's bias is always appropriate. An expert may be asked whether he has previously testified or consulted with counsel. (*Sears v. Rutishauser* (1984), 102 Ill.

2d 402, 466 N.E.2d 210.) Examination into matters showing bias may extend beyond the scope of direct examination. (*People v. Hanks* (1974), 17 Ill. App. 3d 633, 307 N.E.2d 638.) The fact that re–cross-examination extended beyond the scope of redirect examination in the area of bias was not error.

■ Plaintiff next argues his 1973 employment application was irrelevant to the issues of the case. Therefore, cross-examination about it constituted reversible error. Evidence is relevant if it tends to make the existence of any fact of consequence more or less probable. (*Schultz v. Richie* (1986), 148 Ill. App. 3d 903, 499 N.E.2d 1069.) The 1973 employment application was relevant to the issue of damages.

■ Plaintiff next argues defendant improperly examined him about misstatements on his 1986 employment application. Plaintiff contends that the cross-examination unfairly belittled him. It is improper to belittle or personally abuse a witness. (*Charpentier v. City of Chicago* (1986), 150 Ill. App. 3d 988, 502 N.E.2d 385.) In the instant case, on direct examination, plaintiff admitted to making several misstatements on his 1986 employment application. On cross-examination, defense counsel asked plaintiff why he lied. Since plaintiff had already admitted lying, no prejudice could result from asking him why he lied. Although the asking of the question itself skirts on the edge of improper conduct, the examination was not conducted in a belittling manner. No error occurred.

Plaintiff argues the court abused its discretion in allowing the applications to go to the jury room. The record does not indicate that the applications were sent to the jury. This court need not presume that the applications were sent to the jury and that error occurred.

■ Plaintiff also argues the trial court abused its discretion in striking a narrative answer to a question posed on cross-examination by defense counsel. Defense counsel moved to strike the nonresponsive answer. No abuse of discretion occurred. The question called for a yes or no answer.

■ Plaintiff next argues defendant's opening statement was argumentative. Openings statements are intended to inform the jury about the nature of the action and the issues before them. Opening statements should give the jury an outline of the case so the jurors can better understand the evidence. Counsel may outline what he expects the evidence will show, but he may not make a statement which he does not intend or cannot prove. *Gillson v. Gulf, Mobile & Ohio R.R. Co.* (1969), 42 Ill. 2d 193, 246 N.E.2d 269; *Charpentier*, 150 Ill. App. 3d 988, 502 N.E.2d 385.

Here, defendant's counsel said there are two sides to every story

and she believed the evidence would show defendant was not responsible for plaintiff's injuries. These statements are not argumentative in nature.

■ Plaintiff next argues the trial court erred in reserving ruling on whether plaintiff had previously been injured, whether previous reports about the dangerousness of the area had been made, and on weather statistics. These matters were subject to a pretrial motion *in limine*. However, the court reserved ruling on the matters. When a trial court reserves a ruling, the party seeking the ruling must seek a decision in order to preserve the matter for review. (*Oko v. Rogers* (1984), 125 Ill. App. 3d 720, 466 N.E.2d 658.) In the instant case, plaintiff did not seek a ruling on the reserved matters at trial. Additionally, he first introduced evidence of plaintiff's prior injuries on direct examination. He also, through a coemployee's testimony, introduced evidence that the premises were slick and that the matter had been reported to defendant's employees. Finally, plaintiff introduced weather statistics. No error occurred.

■ Plaintiff next argues the trial court committed error when it allowed defendant to lead his witnesses. Allowance of leading questions rests within the sound discretion of the trial court. Its determination will not be reversed absent an abuse of that discretion and a showing of substantial prejudice. (*Waukegan Park District v. First National Bank of Lake Forest* (1961), 22 Ill. 2d 238, 174 N.E.2d 824; *People v. Spencer* (1983), 119 Ill. App. 3d 971, 457 N.E.2d 473; 107 Ill. 2d R. 238.) Plaintiff, here, does not argue he was prejudiced by the form of the questions.

■ Plaintiff next argues his exercise of care for his own safety should not have been an issue in the case. Defendant's affirmative defenses allege plaintiff's failure to exercise ordinary care should act to reduce his damages. There was evidence that plaintiff knew the slope was icy, did not wear gloves, had to hold onto a metal ladder, and had indicated he fell because he lost his grip on the ladder. Plaintiff's negligence was, therefore, in issue.

■ Finally, plaintiff argues defendant's closing argument was improper, depriving him of a fair trial. Plaintiff did not object to the argument at trial. Therefore, he waived any contention that it was improper. *Lebrecht*, 130 Ill. App. 3d 457, 473 N.E.2d 1322.

For the above reasons, we affirm the trial court.

Affirmed.

KNECHT and SPITZ, JJ., concur.