THE TOWN OF THE CITY OF BLOOMINGTON et al., Plaintiffs-Appellants and Cross-Appellees, v. BLOOMINGTON TOWNSHIP et al., Defendants-Appellees and Cross-Appellants.

Fourth District   No. 4—92—0010

Opinion filed August 24, 1992.

---

J. Todd Greenburg, Corporation Counsel, of Bloomington, for appellant City of Bloomington.

James R. DePew, of DePew, Grimes & DePew, of Bloomington, for appellant Town of City of Bloomington.

Bruce Thiemann, of Peoria, for appellee Bloomington Township.

JUSTICE STEIGMANN delivered the opinion of the court:

On four separate dates in 1990, the City of Bloomington (City) annexed four parcels of land in Bloomington Township, the adjacent township south of the City. On the dates of these annexations, the boundaries of the Town of the City of Bloomington (City Township) were coterminous with those of the City. As a result of these annexations by the City, City Township claimed that all four annexed parcels had automatically been transferred from Bloomington Township to City Township. Despite this claim, Bloomington Township asked the City's Board of Election Commissioners to place the transfer question on the November 1991 ballot for referendum approval. The board did so, and in the November 1991 election, the voters in Bloomington Township voted against the transfer.

In August 1991, before the November 1991 election was held, the City and City Township filed the present action seeking, in part, a declaratory judgment that the four parcels had already automatically transferred to City Township and that the referendum would be a nullity. After the November 1991 election was held, the trial court granted the petition for declaratory judgment, held that the four parcels had automatically transferred, and also held that the referendum

results to the contrary were therefore null and void. The court further held that the four parcels had transferred only because the Bloomington Township board of trustees had not timely preserved the issue of transfer for referendum approval. City Township, the City, and Bloomington Township appeal from that order. Bloomington Township also argues on appeal that the trial court improperly excluded testimony regarding legislative intent of the statute at issue.

We affirm.

## I. Facts

The State of Illinois is divided into counties, which are sometimes divided further into townships. For the most part, townships divide a county into adjacent, rectangular plats. Townships do not have "home-rule" authority; instead, they can perform only those governmental functions allowed by statute. (Ill. Rev. Stat. 1991, ch. 139, par. 38(a).) Two types of townships exist: rural and urban. Rural townships govern large areas of rural land, providing the residents thereof with certain governmental functions, such as road construction and maintenance. They also provide localized government services for rural areas that do not have a city government. An urban township (or coterminous township), on the other hand, lies entirely within the boundaries of a municipality. Although an urban township can exercise the same powers as rural townships, an urban township usually does not because the coterminous city government provides those services.

McLean County is divided primarily into rectangular, square-like townships. City Township cuts into an otherwise square Bloomington Township, creating a jagged boundary. This boundary between City Township and Bloomington Township has changed frequently over the years as the City annexed parts of Bloomington Township.

The City annexed the four parcels of land at issue in this case in four separate annexation ordinances. The first ordinance was passed on January 8, 1990; the second ordinance on March 12, 1990; the third ordinance on June 26, 1990; and the fourth ordinance on July 23, 1990. Thus, all four ordinances were passed within one 12-month period. The first and third ordinances annexed tax-exempt property and accordingly did not deprive Bloomington Township of any of its tax base. However, the second ordinance annexed 0.9617% of Bloomington Township's equalized assessed valuation (EAV), and the fourth ordinance annexed 0.2229% of Bloomington Township's EAV. Therefore, the second and fourth annexations deprived Bloomington Township of 1.1846% of its total EAV.

Within 45 days of each of the first three annexation ordinances, the Bloomington Township board passed resolutions stating that the transfer of the annexed parcels from Bloomington Township to City Township would not be in the best interests of Bloomington Township. The Bloomington Township clerk received notice of the fourth annexation on September 4, 1990. However, the Bloomington Township board did not vote until March 12, 1991, that the transfer of this fourth parcel of land would not be in the best interests of Bloomington Township.

The Board of Election Commissioners for the City approved for referendum at the November 1991 election the transfer question regarding all four parcels. In August 1991, the City and City Township petitioned the circuit court for a declaratory judgment that each parcel had already automatically transferred to the City Township. Before the circuit court ruled on the petition, the voters of Bloomington Township voted against transferring township control of the four parcels from Bloomington Township to City Township.

In December 1991, the trial court entered an order nullifying the November referendum because Bloomington Township had not timely protested the fourth annexation so as to have the question submitted for the November election. The court also held that had Bloomington Township timely protested the fourth annexation, then the referendum could have raised the question of the township transfer of *all four* annexed parcels.

## II. ANALYSIS

### A. *Section 1 of the Township Annexation Act*

This case requires the first judicial construction of the fourth and ninth paragraphs of section 1 of the Township Annexation Act (Act) (Ill. Rev. Stat. 1991, ch. 139, par. 127), which read as follows:

> "Whenever a city which is coterminous with a township proposes to annex any territory in an adjacent township, the city clerk shall, by registered or certified mail, file a certified copy of the annexation ordinance with the clerk of the township in which the proposed disconnection is to take place. *Except as otherwise provided herein,* if, within 45 days after the notification, the board of trustees of the township from which the territory is to be disconnected determines by a majority vote of those then holding office that the disconnection would not be in the best interests of that township, the board may request that

a referendum approving or disapproving the disconnection be held in that township. ***

            * * *

Within any 12 month period beginning on the date of a co-terminous city's first annexation after August 11, 1986, where any parcel of territory lying in an adjacent township is annexed by the city and such parcel constitutes less than 1% and *until* all such parcels annexed during each such annual period constitute 1% or more of the total equalized assessed value of the adjacent township, *each separate parcel* shall become disconnected from that township and included in the coterminous township *without having the proposition to disconnect submitted to the voters in the adjacent township.*" (Emphasis added.) Ill. Rev. Stat. 1991, ch. 139, par. 127.

In the present case, the City passed three annexing ordinances that cumulatively annexed less than 1% of the EAV of an adjacent township's territory. The City then passed an additional ordinance that increased the total amount of annexed land to 1% or more of the adjacent township's EAV. However, the adjacent township (Bloomington Township) failed to vote to put the fourth annexation to referendum approval within the time provided by section 1 of the Act. The issue in this case is whether the transfer of township control over the land in any or all of the City's annexations that occurred within that 12-month period thereby became subject to referendum approval.

Bloomington Township argues that the referendum regarding the first three annexations should stand because Bloomington Township did protest those three annexations within 45 days. This argument is based on paragraph 12 of the trial court's order, which states the following:

"12. Whenever, in the relevant twelve month period, a city which includes a coterminous city township annexes a total of more than 1% of the total EAV of an adjacent township, *all parcels so annexed during that twelve month period may be the subject of a referendum to disconnect territory. The automatic disconnections of the first three annexations by the City of Bloomington were contingent on the City not annexing more than 1% of Bloomington Township's EAV in the annexation year.*" (Emphasis added.)

However, paragraph 13 of the trial court's order reads as follows:

"13. The Board of Trustees of Bloomington Township did not vote to request a referendum on the fourth annexation within forty-five days after receiving notification of such annexation

from the Bloomington City Clerk. Because the fourth annexation was the action which would have permitted a disconnection referendum, the failure to vote [on the fourth annexation] to request a referendum within the proper time limits caused all four parcels involved to be automatically disconnected from Bloomington Township and connected to the [City Township]."

Under the trial court's interpretation of section 1, as shown in the above paragraphs, Bloomington Township's argument has merit. If, indeed, the first three annexations to City Township were contingent on the City's not subsequently pushing the total of annexed land over the 1% EAV threshold within the 12-month period from the date of the first annexation, then the first three annexations would immediately become subject to referendum approval as soon as the City passed another ordinance raising the total of annexed land over the 1% EAV threshold for that 12-month period. In paragraph 12, the court stated that the "automatic [transfers] of the first three annexations by the City of Bloomington were contingent on the City not *annexing* more than 1% of Bloomington Township's EAV in the annexation year." (Emphasis added.) The court did not state that the first three annexations were contingent on Bloomington Township's timely protesting the fourth annexation.

However, we disagree with this reading of the statute by the trial court. Prior to the enactment of Public Act 84—1261, §2, effective August 11, 1986 (see 1986 Ill. Laws 1364, 1366), section 1 of the Act provided that whenever a municipality with a coterminous township annexed territory previously within an adjacent township, the annexed territory would automatically transfer from the adjacent township to the coterminous township. (See Ill. Rev. Stat. 1985, ch. 139, par. 127.) As a result, many rural townships lost much of their EAV when adjacent cities annexed portions of their land. The legislature responded to this situation by enacting Public Act 84—1261, which curbed the extent to which city annexations would automatically transfer township control from the adjacent rural township to the coterminous city township.

Bloomington Township argues that paragraph 12 of the trial court's order correctly states the intent of the legislature to protect adjacent, rural townships from excessive annexation. However, the plain language of section 1 of the Act indicates that *until* the cumulative amount of annexed territory exceeds 1% of the adjacent township's EAV, township control over "each separate parcel" *automatically* transfers to the coterminous township—here, City Township. (Ill. Rev. Stat. 1991, ch. 139, par. 127.) The "each *separate* parcel" phrase

makes this transfer contingent on nothing; instead, it occurs automatically and immediately as long as the total amount of annexed land in a given 12-month period does not exceed 1% of the adjacent township's (here, Bloomington Township's) EAV.

In other words, nothing in the statute indicates that the transfer will occur *only if* the city annexes less than 1% of the adjacent township's EAV during the 12-month period in question. Instead, when a city annexes a parcel that pushes the total amount of annexed land to 1% or more of the adjacent township's EAV, only then does the notice, protest, and referendum paragraph kick into effect, and only then for the annexation that put the annexed property over the 1% threshold, as well as for any subsequent annexations within that same 12-month period. The *prior* annexations within that same 12-month period had already automatically transferred township control of the parcels annexed thereby to the coterminous township. Accordingly, Bloomington Township could do nothing in the present case to challenge the three earlier annexations, no matter how much of its EAV may be affected by later annexations within the same 12-month period.

In grammatical terms, and as the City points out, Bloomington Township's interpretation of the statute changes the "until" in the second, above-quoted paragraph of the statute to "unless." (Indeed, we note that at oral argument, counsel for the Bloomington Township consistently substituted "unless" for "until" in his argument.) The term "until" indicates that an antecedent event, *i.e.*, automatic transfer, will occur "until" a given condition occurs, whereupon the antecedent event will *cease*. On the other hand, the term "unless" indicates that the antecedent event will occur if the condition does not occur *at all*. In the present case, the statute reads that automatic transfer will occur "until" the total annexations reach the 1% threshold within a given 12-month period, whereupon township control will cease to automatically occur, and the notice, protest, and referendum provisions of the first, above-quoted paragraph apply for the most recent and any subsequent annexation. Ill. Rev. Stat. 1991, ch. 139, par. 127.

■ Therefore, under the current statute, when a city with a coterminous township annexes territory formerly within an adjacent township, township control over that territory automatically transfers from the adjacent township to the coterminous township (1) *until* the cumulative annexations within a 12-month period from the adjacent township's territory equal 1% or more of the adjacent township's EAV, *and* (2) *unless*, within 45 days of receiving notice of the annexa-

tion ordinance, the adjacent township votes that the transfer would not be in the best interest of the township. (Ill. Rev. Stat. 1991, ch. 139, par. 127.) If both conditions occur, then the board of the adjacent township can vote to have the question submitted to the voters in that township for a referendum on whether the transfer of township control should take place regarding *only* the parcel of land that took total transfers within a 12-month period over 1% of the adjacent township's EAV and subsequent transfers within the same period. This referendum would not affect the city's annexation at all; instead, the referendum would address only whether township control of the annexed land should transfer from the adjacent township (here, Bloomington Township) to the coterminous, urban township (here, City Township). If either of the above two conditions does not occur, then township control over the annexed territory automatically transfers from the adjacent township to the coterminous, city township.

■ In the present case, township transfer of the first three annexed parcels was contingent on nothing because combined they constituted less than 1% of Bloomington Township's EAV. Because the first of the above conditions did not occur, township control over those three parcels automatically transferred from Bloomington Township to City Township immediately upon their annexation by the City. Only after the City passed the fourth and final annexation ordinance had the City annexed a total of 1% or more of Bloomington Township's EAV. However, Bloomington Township's failure to protest that annexation within 45 days—thereby failing to meet the second condition—caused that territory also to automatically transfer to City Township.

Bloomington Township claims that if a city annexes 0.99%—just under the 1% threshold—of an adjacent, rural township's EAV in one ordinance and then annexes an additional 0.01% of that EAV—pushing the total to the 1% threshold—in a separate ordinance, then the adjacent township will not have an incentive to protest the transfer resulting from the annexation of that latter 0.01%. Thus, a clever city could annex 1% of an adjacent township's EAV and effect an automatic transfer of all that annexed land to its coterminous city township despite the protections of section 1 of the Act. This argument leaves us unpersuaded.

The amendment to section 1 of the Act, contained in Public Act 84–1261, was not designed to block township transfer due to city annexations, only to slow it down a bit. Thus an adjacent, rural township has been given the statutory means to stop a township transfer if that transfer would result in the loss within a 12-month period of 1%

or more of its EAV. Accordingly, we find the "horror story" argued by Bloomington Township to be perfectly consistent with both the *spirit* and the letter of section 1 of the Act, as amended by Public Act 84—1261.

## B. *Estoppel*

Bloomington Township argues that its failure to protest the fourth annexation within the statutorily required 45 days resulted from confusion the City caused about whether the parcels included with the fourth annexation were located within Bloomington Township or somewhere else.

Based thereon, Bloomington Township argues that the City is estopped from claiming that Bloomington Township did not comply with section 1 of the Act. The trial court acknowledged Bloomington Township's confusion, but held that the City did not intentionally confuse Bloomington Township and that it thus remained Bloomington Township's duty to resolve this confusion and vote to request a referendum within 45 days of receiving notice of the annexation. We agree with the trial court. "To be estopped, a party must engage in conduct which reasonably causes the other person to change his position by lulling the claimant into a false sense of security." (*Board of Directors of Carriage Way Property Owners Association v. Western National Bank* (1985), 139 Ill. App. 3d 542, 549, 487 N.E.2d 974, 979.) "Equitable estoppel prevents a party from taking advantage of his own wrongdoing." *Neaterour v. Holt* (1989), 188 Ill. App. 3d 741, 749, 544 N.E.2d 846, 851.

The record shows that the City notified Bloomington Township of every annexation it made, regardless of whether the annexed land is located within Bloomington Township. The City's notice does not expressly identify the township in which the annexed land is located; instead, the notice describes the annexed land by its technical, legal description. The City also has followed a practice of sending Bloomington Township a yearly summary of the land the City annexed during the previous year. When Bloomington Township received notice in September 1990 of the City's fourth annexation, Bloomington Township misread the notice and thought that the City had annexed land from some other township. Only when Bloomington Township received the City's yearly notice in February 1991 did it realize that the City had annexed some of its own land. The Bloomington Township board then voted on March 12, 1991, to protest the transfer of township control of the annexed parcels, thereby causing the question to be submitted to referendum vote. The board's vote oc-

curred within 45 days of Bloomington Township's receiving the February 1991 summary.

■ In the present case, the City neither committed any wrong nor lulled Bloomington Township into a false sense of security by providing only a legal description of the parcels annexed in the City's fourth annexation ordinance. Although a legal description of land can confuse most lay people, it did suffice to provide Bloomington Township with notice; as long as the legal description accurately identified the annexed parcels at issue, Bloomington Township bore the burden of resolving any confusion it had over that description. Indeed, we note that Bloomington Township had no trouble understanding the legal descriptions of the parcels annexed by the City's first three annexations at issue, as shown by its passing resolutions to put the question of the township transfer of those parcels to referendum. Its failure to do so for the parcels contained within the fourth annexation does not estop the City from pointing out Bloomington Township's failure to comply. We find no basis in this record for holding that the City has done anything that could estop it from doing so.

## C. *Substantial Compliance*

Bloomington Township also claims that we should not hold it to strict compliance with section 1 of the Act. It argues that it passed the required protest vote within 45 days of ascertaining that the City's fourth annexation had annexed some of its land. Thus, it argues that it corrected its failure to provide a timely protest vote by substantially complying with section 1. It adds that the trial court did not punish the City for failing to notify Bloomington Township of the fourth annexation until long after that annexation occurred, even though the statute states that the City should have sent the Bloomington Township notice when the City "proposes to annex any territory in an adjacent township." Ill. Rev. Stat. 1991, ch. 139, par. 127.

■ However, because the 45-day period within which Bloomington Township was statutorily required to protest the transfer did not start until the City notified Bloomington Township of the annexation, the City's delay in notifying Bloomington Township did not adversely affect its ability to challenge the fourth annexation by referendum, if it so wished. Although the City should have notified Bloomington Township that the City *proposed* to annex the parcels in question, not after it had already passed the ordinance that annexed those parcels, its failure to do so did not adversely affect the statutory scheme.

In addition, we find no reason to allow Bloomington Township to merely substantially comply with the Act. Section 1 of the Act clearly

states that Bloomington Township had 45 days to pass the appropriate resolution, which it did not do. (Ill. Rev. Stat. 1991, ch. 139, par. 127.) The 45-day period provided it with ample time to do so. We will not—and cannot—rewrite the statute from "within 45 days" to "within a sufficiently timely period before the next general election" under the guise of holding Bloomington Township to only substantial compliance.

### D. *Expert Testimony on Legislative Intent*

Bloomington Township offered what it deemed expert testimony by George Miller, the executive director of the Township Officials Association of Illinois, on the legislative intent of section 1 of the Act. Miller claimed he had personally participated in the 1986 legislative process that led to the enactment of Public Act 84—1261, which amended section 1 of the Act by adding the paragraphs at issue in this case. The City objected to Miller's testimony, and the trial court sustained that objection. Bloomington Township then made an offer of proof, at which Miller testified that Public Act 84—1261 resulted from a compromise between his association and another association representing the interests of cities, and that the position asserted by Bloomington Township in this case correctly stated that compromise. Bloomington Township claims that the trial court erred by sustaining the City's objection to this testimony. We disagree.

A court should not permit opinion on a question of law (*Selby v. Danville Pepsi-Cola Bottling Co.* (1988), 169 Ill. App. 3d 427, 437, 523 N.E.2d 697, 702; M. Graham, Cleary & Graham's Handbook of Illinois Evidence §704.1, at 536-37 (5th ed. 1990)) unless the court is dealing with a question of foreign law. (McCormick on Evidence §12, at 31 (3d ed. 1984).) Further, judges do not need expert help to merely read statutes. The trial court thus appropriately did not permit Miller to testify on his opinion as to how the statute should be construed.

■ Indeed, the trial court would have erred had it allowed Miller to testify. (See *Selby*, 169 Ill. App. 3d at 437, 523 N.E.2d at 702 ("Statutory interpretation is not a matter upon which an expert is competent to testify").) Construing legislative enactments is a uniquely judicial function, and legislators and others involved in the legislative process ought not be allowed to testify regarding the meaning of a statute. Accordingly, "the views of a legislator concerning a statute already enacted are entitled to no more weight than the views of a judge concerning a statute not yet passed." *Sullivan v. Finkelstein* (1990), 496 U.S. 617, 632, 110 L. Ed. 2d 563, 578, 110 S. Ct. 2658, 2667 (Scalia, J., concurring in part).

We note that legislators do not make laws by making speeches on the floor of the legislative chamber or by writing memos for committee meetings. They make laws by majority vote on a specifically worded bill that has been read three times before each house and distributed to each legislator. (Ill. Const. 1970, art. IV, §§8(c), (d).) Neither the disclosed nor undisclosed intent of a legislator or lobbyist becomes *law*; only the bill as it reads when passed becomes law. Allowing tailored court testimony purporting to explain what the legislature *meant* to say is unacceptable and potentially dangerous.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

GREEN, P.J., and LUND, J., concur.