Judith A. BUSCAGLIA,
Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 93–2583.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 11, 1994.

Decided May 27, 1994.

Glenn J. Jazwiec (argued), Roland P. Ernst, Carr & O'Rourke, Chicago, IL, for plaintiff-appellant.

Marsha A. McClellan, Kurt Lindland (argued), Office of the U.S. Atty., Criminal Div., Daniel E. May, Office of the U.S. Atty., Civil Div., Appellate Section, Linda A. Wawzenski, Asst. U.S. Atty., Office of the U.S. Atty., Chicago, IL, for defendant-appellee.

Before BAUER, FLAUM, and ROVNER, Circuit Judges.

FLAUM, Circuit Judge.

Judith Buscaglia ("Buscaglia") slipped and fell in a United States Post Office in Elmhurst, Illinois, on January 27, 1987. Nearly four years later, she filed a complaint in federal district court seeking $250,000 damages against the United States ("the government") under the Federal Tort Claims Act ("FTCA"). 28 U.S.C. § 1346(b). The government filed a motion to strike the affidavit of Buscaglia's expert, John Van Ostrand, and a motion for summary judgment. The district court granted both motions. Buscaglia appeals those rulings. We affirm in part and reverse in part.

I.

On the evening of the incident giving rise to this litigation, the ground outside the post office was covered with a thin layer of snow and slush. Buscaglia was wearing snow boots as she entered the post office, crossed wet floor mats, and walked through a vestibule and across the lobby to deposit her letters. While returning across the lobby, Buscaglia slipped and fell approximately four to six feet from the vestibule. She noticed a muddy accumulation of water in the area of her fall.

The postal facility's established policy required an employee to examine the lobby floor, on days of inclement weather, at approximately fifteen minute intervals and to mop up standing water when necessary. According to the depositions of postal employees, the post office janitor, Gene Hillard ("Hillard"), routinely mopped the area of the

lobby where Buscaglia fell.[1] He last checked the lobby area at 5:55 p.m. that evening. Hillard told another postal employee, John Anderson ("Anderson"), that the lobby was "fine" and proceeded to "punch out" for the day.

Buscaglia asserts two theories that would entitle her to recover under the Federal Tort Claims Act. First, she claims that the government negligently surfaced the floor with tile it should have known would become "unduly slippery when wet." In support of this theory, Buscaglia offered the affidavit of John Van Ostrand, a licensed architect and expert on the slip resistance of floor tile. Second, she contends that the government negligently failed to exercise ordinary care in removing tracked-in water from the post office lobby after voluntarily undertaking that task. After first granting the government's motion to strike Van Ostrand's affidavit, the district court granted summary judgment for the government on both theories of liability. Buscaglia appeals all of the district court's rulings.

## II.

We first consider whether the district court erred in excluding Van Ostrand's affidavit under Fed.R.Evid. 403 and 702. In response to Buscaglia's discovery request, the government provided a sample piece of tile[2] upon which Van Ostrand performed three independent tests to ascertain its coefficient of friction—a measure of a surface's slipperiness. According to his affidavit, these tests are generally accepted, widely used by professionals, and based on long-established scientific principles. Applying these tests, Van Ostrand determined that the tile sample had a coefficient of .32, which fell below the commonly accepted level of .5 for slip resistant surfaces in buildings accessible to the public.[3] Based on this calculation, Van Ostrand opined that (1) even when dry, the floor surface was improper for a public build-

ing, and (2) when wet, the floor surface was even more dangerous because its co-efficient of friction would be lower still.

■ A trial court has broad discretion in ruling on the admissibility of expert testimony, and we will reverse its decision only in the case of a clear abuse of discretion. *Wallace v. Mulholland,* 957 F.2d 333, 336 (7th Cir.1992). Here the district court granted the government's motion to strike Van Ostrand's affidavit, relying on two separate provisions of the Federal Rules of Evidence. To the extent the affidavit sought "to introduce some quantifiable evidence of the slipperiness of the floor at the post office," the court excluded it under Rule 403. The court found the probative value of Van Ostrand's opinion very low in light of the physical differences between the dry, unwaxed tile he tested and the wet and previously waxed tile on which Buscaglia fell. As the court stated, "[i]t is not helpful for the jury to know the coefficient of friction of a surface the plaintiff did not slip on." Order at 1. In view of the "allure of scientific jargon and a witness with an advanced degree," the court concluded that the danger of unfair prejudice and confusion of the issues outweighed the probative value of Van Ostrand's view of the floor surface when dry. Furthermore, to the extent the affidavit sought "to prove the principle that this surface would become even more slippery when wet," the court excluded it under Rule 702. Noting Buscaglia's "shocking" theory that "the floor becomes slippery when wet," the court reasoned that "[p]laintiff is not entitled to introduce expert testimony in order to make the simple appear complicated." Order at 1.

On appeal, Buscaglia concedes the obvious—that the average person comprehends that floor surfaces become more slippery wet than dry. She maintains, however, that Van Ostrand's expert testimony was admissible under Rule 702 to explain that some surfaces'

---

1. Hillard's deposition was never taken.

2. The floor tile in the Elmhurst Post Office has been identified as "Kentile 1071, 1J 243B Earth and Brown Rustic Stone." The government provided the sample piece of tile from its replacement stock.

3. According to Van Ostrand, this standard was promulgated by the Capital Development Board of the State of Illinois.

slipperiness increases more than others and to establish that the floor surface of the Elmhurst Post Office did not meet the appropriate standard for a public building. Further, she argues that the court's decision to exclude the affidavit under Rule 403 was manifestly erroneous. Buscaglia insists that the court vastly understated the probative value of Van Ostrand's affidavit by overstating the differences between the test sample and the condition of the floor on which she fell, in part because the court based its decision on faulty premises not supported in the record. Specifically, Buscaglia asserts that the record evidence indicates a dispute as to whether the floor was wet or dry at the time of the fall—she claims that the floor was wet while two postal employees gave deposition testimony that it was dry. In addition, Buscaglia points out the absence of testimony indicating when the floor previously had been waxed and with what type of wax.

As a threshold matter, Van Ostrand's affidavit could be admitted only upon the laying of a foundation that the tests he performed on the tile sample occurred under substantially similar circumstances to those present at the time of the accident. *Estate of Carey by Carey v. Hy–Temp Mfg., Inc.,* 929 F.2d 1229, 1235 n. 2 (7th Cir.1991). In applying this standard, we have emphasized that "substantially similar" does not mean "identical," and that the range between similar and identical is a matter to be addressed on cross examination. *Id.* (citing *Kelsay v. Consolidated Rail Corp.,* 749 F.2d 437, 450–51 (7th Cir.1984) (Posner, J., dissenting)). We conclude that the conditions of Van Ostrand's test were sufficiently similar to the conditions of Buscaglia's fall to establish the requisite foundation, and we note that nothing in the district court's order appears to take a contrary view.

■ Rule 702 establishes two admissibility requirements for expert testimony: (1) the expert must be qualified, and (2) the subject matter of the expert's testimony must be suitable, that is, consist of specialized knowledge that will be helpful or essential to the trier of fact in deciding the case correctly. *United States v. Stevenson,* 6 F.3d 1262, 1266 (7th Cir.1993); Fed.R.Evid. 702. Here, the government does not contest Van Ostrand's qualifications, and we are persuaded that Van Ostrand's conclusions convey specialized knowledge that is at least moderately probative of an important issue in this case. *Cf.* 3 Weinstein & Berger, Weinstein's Evidence § 702(02) at 702–18 (1994 supplement). We note also that expert testimony may be excluded if it addresses matters that people of common understanding can easily comprehend, *United States v. Lundy,* 809 F.2d 392, 395 (7th Cir.1987), or if based upon speculation, unsupported assumptions, or conclusory allegations. *United States v. Tranowski,* 659 F.2d 750, 755 (7th Cir.1981). If Buscaglia were seeking admission of the affidavit simply to advance the idea that a floor becomes slippery when wet, we would affirm a decision to exclude the evidence on the former ground; if the affidavit lacked adequate foundation it would be excluded on the latter ground. Here Van Ostrand's affidavit satisfies the requirements of Rule 702, at least in support of Buscaglia's theory that, wet or dry, this tile floor was unreasonably slippery.

■ Of course, expert testimony that is otherwise admissible under Rule 702 may nonetheless be excluded under Rule 403 if its probative value is outweighed by the danger of unfair prejudice. *United States v. Brown,* 7 F.3d 648, 654 (7th Cir.1993). This case presents the unusual situation in which a district court's decision to exclude evidence under Rule 403 constitutes clear error on the basis of an incorrect weighing of the relevant factors. As noted above, we are satisfied that Van Ostrand's affidavit has adequate foundation and at least moderate probative value. Admittedly, the tile sample *provided by the defendant in response to a discovery request* was not identical to the tile on which Buscaglia fell. Indeed, to test the *actual* tile on which she fell, Buscaglia would have needed to produce an expert almost immediately. The tested tile came from the replacement stock and may well have differed from the actual tile in several ways—for example, the amount of wear, the absence or presence of wax and/or water, and perhaps other factors as well. However, the significance of these differences is generally a question of weight for the trier of fact, not a question of admis-

sibility for the court. *United States v. Russell,* 971 F.2d 1098, 1106 (4th Cir.1992). Generally, they can be adequately explored upon cross-examination. Even if Van Ostrand's affidavit were only of moderate probative value, however, we would still find clear error here on the basis of the district court's misplaced apprehension about the possible effects of the affidavit on a putative jury. *See* Order at 1. The district court's order assumed that this case would be tried before a jury. Except for actions pertaining to internal revenue laws, however, the trier of fact in FTCA cases *is* the district court judge. 28 U.S.C. §§ 2402 & 1346. Thus, the usual dangers that attend the admission of expert testimony and sometimes justify the exclusion of relevant evidence under Rule 403—unfair prejudice to the defendant and confusion of the issues—should weigh far less heavily in the probativeness versus prejudice calculus than they would in a jury case. Under an appropriate balancing analysis, the affidavit should have been admitted.

In sum, the district court committed clear error by critically discounting the probative value of Van Ostrand's affidavit while significantly overstating the risk of prejudice and confusion its admission would engender.

### III.

■ In reviewing the district court's grant of summary judgment to the government, we examine the record and the controlling law *de novo. Apple v. West,* 929 F.2d 1176, 1179 (7th Cir.1991). A court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue exists when the evidence is such that a reasonable jury could find for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–51, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). The non-movant may not rely upon mere allegations, but must present specific facts to show that a genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–26, 106 S.Ct. 2548,

2552–54, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(e). As noted, Buscaglia asserts two theories of recovery under the FTCA: (1) the government negligently placed a tile surface on the floor it should have known would become "unduly slippery when wet," and (2) the government negligently failed to exercise ordinary care after voluntarily undertaking the task of removing tracked-in water from the lobby floor. We must determine whether the district court erred in rejecting both of these theories on summary judgment, taking into account Van Ostrand's affidavit erroneously disregarded by the district court.

■ The substantive law of the state where the injury occurred governs actions brought under the Federal Tort Claims Act. *See Hess v. United States,* 361 U.S. 314, 318, 80 S.Ct. 341, 345, 4 L.Ed.2d 305 (1960); *Midwest Knitting Mills v. United States,* 950 F.2d 1295, 1297 (7th Cir.1991). Accordingly, Illinois tort law applies here. Under Illinois law, liability may be imposed on a landowner if a walking surface becomes unusually or unreasonably dangerous because of the nature of its materials or construction. *Richter v. Burton Investment Properties, Inc.,* 240 Ill.App.3d 998, 181 Ill.Dec. 780, 784, 608 N.E.2d 1254, 1258 (2d Dist.1993); *Selby v. Danville Pepsi–Cola Bottling,* 169 Ill.App.3d 427, 119 Ill.Dec. 941, 945, 523 N.E.2d 697, 701 (4th Dist.1988) (citations omitted). For example, in *Sommese v. Maling Brothers, Inc.,* the Illinois Supreme Court stated:

> [I]t was a jury question as to whether the defendant knew or should have known that the material used in the composition of the floor, upon becoming wet and damp, became very slippery and dangerous.... It is this feature of the condition of an outside terrazo [*sic*] floor which distinguished this case from those cases in which recovery has been denied as a result of slipping and falling on a wet floor.

36 Ill.2d 263, 222 N.E.2d 468, 470 (1966). The Supreme Court upheld the jury verdict for the plaintiff, who had introduced expert testimony that a terrazzo floor, upon becoming wet, is very slippery and hazardous without an abrasive material on it. *Id.* By contrast, the *Richter* court entered summary

judgment against a plaintiff who had failed to present a factual basis "to support his allegation that defendant either installed a ceramic tile floor that was unreasonably slippery or maintained the floor in an unreasonable manner." 181 Ill.Dec. at 784, 608 N.E.2d at 1258.[4] In addition to presenting evidence of the dangerous condition, a plaintiff also must identify defendant's negligence as the proximate cause of the injury and establish that the property owner had notice of the condition. *Selby,* 119 Ill.Dec. at 945, 523 N.E.2d at 701; *Gilberg v. Toys "R" Us, Inc.,* 126 Ill.App.3d 554, 81 Ill.Dec. 825, 827, 467 N.E.2d 947, 949 (1st Dist.1984).

■■ We find that Van Ostrand's affidavit and deposition testimony present a sufficient factual basis such that a trier of fact *could* find for Buscaglia on the theory that the composition of the floor, either by itself or in combination with an accumulation of water, caused her injury.[5] Accordingly, we reverse the district court's grant of summary judgment on her first theory of liability. Of course, whether the evidence should result in judgment on the merits for Buscaglia is another matter altogether, on which it is not our role to comment.

■■ Finally, we address Buscaglia's argument that the government, having undertaken the task of removing the natural accumulation of water in the lobby, failed to meet the applicable standard of ordinary care. *See Wilson v. Gorski's Food Fair,* 196 Ill.App.3d 612, 143 Ill.Dec. 477, 480, 554 N.E.2d 412, 415 (1st Dist.1990). Buscaglia tenders two sets of facts from which she contends that the trier of fact could infer that the government's negligent performance caused her injury. First, she states in her

deposition that she saw a "muddy accumulation" of water on the floor that she saw for the first time after falling. Second, she notes that janitor Hillard inspected the lobby area for standing water at 5:55 p.m. and told a fellow employee that the lobby was "fine." Hillard carried a mop and bucket at this time, but no one saw him actually mop the floor.[6] From these facts, Buscaglia submits that the trier of fact could conclude that Hillard mopped the floor at 5:55 p.m. but negligently left standing water which caused her fall. Like the district court, we find this argument merely speculative. The duty of ordinary care does not impose a continuous obligation to mop up every small puddle of water dragged in by patrons on a snowy, slushy evening. Buscaglia fails to demonstrate either that there was water on the floor at the time of Hillard's last regular patrol of the lobby or that Hillard failed to thoroughly mop up any water that was present at that time. While a court must draw all reasonable factual inferences in the light most favorable to the non-movant, *LaScola v. U.S. Sprint Communications,* 946 F.2d 559, 563 (7th Cir.1991), summary judgment is proper where a plaintiff neglects to establish any factual support for a theory of recovery. Thus, we affirm the district court's grant of summary judgment for the government on Buscaglia's theory that the government negligently failed to exercise ordinary care in discharging its freely undertaken task of removing tracked-in water from the lobby.

## IV.

The district court erred in excluding the affidavit of John Van Ostrand under Fed. R.Evid. 403 and 702 and in granting summary judgment for the government on Bus-

---

**4.** The court specifically noted examples of how plaintiff might have presented evidence supporting her allegations: "For instance, a custodian of the building could have explained how often the foyer was waxed and buffed. A building contractor could have testified whether the ceramic tile used in the building was reasonably safe or excessively slippery. Even plaintiff could have detailed the factual basis for his conclusion that the foyer was too slippery." *Id.* 181 Ill.Dec. at 784, 608 N.E.2d at 1258.

**5.** It remains for the trier of fact to resolve the factual dispute as to whether the floor was wet,

as Buscaglia claims, or dry, as the postal workers assert in their depositions.

**6.** As noted, Hillard was not deposed although he could have shed light on whether he actually mopped the area in which Buscaglia fell. Of course, Buscaglia had the right to depose Hillard or to apprise the court of the reasons she was unable to do so. Having done neither, Buscaglia may not escape summary judgment on the possibility that a witness may come forward at trial to establish her right to recover.

caglia's first theory of liability while it properly granted summary judgment for the government on her second theory of liability. Accordingly, the judgment of the district court is AFFIRMED IN PART, REVERSED IN PART, and the case is REMANDED for proceedings consistent with this opinion.