KATHLEEN V. MAGEE, Indiv. and Derivatively on Behalf of Chefwear, Inc., Plaintiff-Appellee, v. ROCHELLE A. HUPPIN-FLECK *et al.*, Defendants-Appellants.

First District (4th Division)   No. 1—95—1233

Opinion filed March 29, 1996.

Mitchell L. Marinello, Bruce Braverman, and Heather E. Ross, all of Novack & Macey, of Chicago, for appellants.

Richard J. Phelan, Mary Kay Kelly, Kathleen H. Klaus, and Daniel J. Collins, all of Phelan, Pope, Cahill, Devine & Quinlan, Ltd., of Chicago, for appellee.

JUSTICE THEIS delivered the opinion of the court:

This is an interlocutory appeal pursuant to Supreme Court Rule 307(a)(1) (134 Ill. 2d R. 307(a)(1)), from an order granting preliminary injunctive relief in favor of the plaintiff, Kathleen Magee. The defendants, Rochelle A. Huppin-Fleck (Huppin-Fleck) and Gary L. Fleck (Fleck), challenge the circuit court's order enjoining Fleck's nonvoting shares of common stock in Chefwear, Inc., from converting to voting shares pursuant to the corporation's articles of amendment. In rendering its ruling, the court only considered the question of whether Fleck's shares were issued in violation of the Oregon Business Corporation Act (Oregon Act). Or. Rev. Stat. § 60.010 *et seq.* (1993). The court permitted testimony concerning the meaning of the Act, but did not hear any testimony concerning controverted factual issues raised in the plaintiff's amended complaint and motion for a preliminary injunction, as well as the defendants' answer and response to the motion. On appeal, we are asked to determine (1) whether we should adhere to an abuse of discretion or *de novo* standard of review in examining the propriety of the court's order, (2) whether the court failed to hold a proper and complete evidentiary

hearing, and (3) whether the trial court erred in finding that the plaintiff established the elements entitling her to a preliminary injunction. We hold that although an abuse of discretion standard of review applies to the court's factual determinations, we are permitted to interpret the Oregon Business Corporation Act according to a *de novo* standard of review. Further, we find that the plaintiff failed to meet her burden of demonstrating the need for a preliminary injunction. Therefore, for the reasons which follow, we remand this case for proceedings consistent with this opinion.

The plaintiff, and one of the defendants, Huppin-Fleck, started Chefwear, Inc., in the fall of 1990, in Los Angeles, California. Chefwear manufactures and sells clothing for chefs and restaurant workers. In the summer of 1992, Chefwear's operations moved to Chicago, Illinois. That year, Chefwear became incorporated under the laws of Oregon.

In 1993, Chefwear experienced cash-flow problems. In order to combat the situation, Magee and Huppin-Fleck decided to sell 86 shares to Huppin-Fleck's husband, Gary L. Fleck, for $50,000.

The record on appeal contains an undated handwritten agreement pertaining to Fleck's shares. Under the terms of the agreement, Fleck's nonvoting shares were to convert to voting shares. The agreement states, in relevant part:

> "It has been agreed by the principle [*sic*] partners of Chefwear Inc. that if the company has not been sold by partners KATHLEEN MAGEE, and ROCHELLE HUPPIN within 2 years from April 1, 1993, the 86 non-voting shares held by GARY L. FLECK, will be transferred to voting shares of common stock."

The two signatures on the document appear to be those of Huppin-Fleck and Magee. However, during her deposition, Magee denied that she signed the agreement. The defendants then retained a handwriting expert, who stated that Magee's signature was genuine. Nothing in the record before us refutes this testimony.

The parties stipulated that on May 4, 1993, the amended articles of incorporation were filed with the Oregon Secretary of State. The amended articles authorized the conversion of Fleck's nonvoting shares into voting shares by March 31, 1995, if certain conditions were present.

On March 8, 1995, Magee filed a complaint against the defendants seeking injunctive and other relief on the grounds that the defendants committed fraud in relation to Fleck's stock purchase. Magee maintained that she never agreed to give Fleck nonvoting shares that would convert to voting shares.

Then, on March 22, 1995, Magee filed an amended complaint al-

leging, in part, that Fleck's shares were issued in violation of Oregon law and were therefore void. Specifically, count I alleges fraud and a violation of the Oregon Business Corporation Act as grounds for injunctive relief. Count II requests declaratory relief that the stocks are void because they were issued in violation of the Oregon Act. The remaining counts seek rescission based on fraud, rescission based on unilateral mistake, rescission based on unconscionability, breach of fiduciary duty and intentional infliction of emotional distress.

On March 22, 1995, the plaintiff also filed a renewed motion for a preliminary injunction. In her motion, the plaintiff maintained that there was a reasonable likelihood that she would succeed on the merits of her claims that the company never issued shares to Fleck, that the shares which purportedly were issued were void under Oregon law, that Fleck undervalued the company when he offered to purchase shares, that Fleck offered no consideration for his conversion rights, and that Huppin-Fleck had no authority to revise the articles of amendment.

On March 27, 1995, the defendants filed a verified answer to the plaintiff's complaint refuting many of the allegations, including the charge of fraud. Specifically, the defendants claimed that Magee agreed to the articles of amendment and signed a unanimous written consent regarding the amendment which permitted Fleck's shares to convert on March 31, 1995. The defendants also filed a response to the plaintiff's motion stating that Fleck's shares were not issued in violation of the Oregon Act.

At the outset of the hearing on the plaintiff's motion for preliminary injunctive relief, the court stated that in order to simplify the proceedings, it would proceed first on the issue of whether Fleck's shares were issued in violation of Oregon law. The court stated that if the plaintiff succeeded on this issue, then the court would not necessarily have a "full-blown hearing on all of the other claims made by [the] Plaintiff."

Then, over the defendants' objection, the court allowed the plaintiff to present testimony concerning the proper interpretation of the Oregon Act. Ultimately, the defendants also offered testimony concerning the provisions at issue in order to refute statements made by the plaintiff's witness. After hearing the testimony, the court stated that it did not intend to decide the issue whether or not Fleck's stocks were issued in violation of Oregon law. The court indicated that based on the documents presented, its own understanding of Oregon law and its understanding of general principles of corporate law, the plaintiff demonstrated a fair question of a likelihood of success on the merits of her claim that Fleck's shares were issued in

violation of Oregon law and are therefore void. As such, the court granted the plaintiff's motion for a preliminary injunction.

A written order dated March 31, 1995, reflects the court's oral ruling. The order expressly prohibits Fleck's shares from converting into voting shares, enjoins Fleck from exercising any voting rights and fixes bond. The defendants now appeal from this order.

The first question raised by the parties is whether this court must adhere to an abuse of discretion or a *de novo* standard of review. The plaintiff suggests that only an abuse of discretion standard applies, arguing that the circuit court did not abuse its discretion in finding a likelihood of success on the merits of her claim that Fleck's shares were issued in violation of Oregon law. The defendants agree that an abuse of discretion standard applies to any of the court's findings of fact. However, they argue that we must interpret the relevant Oregon statutory provisions as a matter of law.

■ We recognize that generally the decision to issue a preliminary injunction is within the sound discretion of the trial court. *Fischer v. Brombolich*, 207 Ill. App. 3d 1053, 566 N.E.2d 785 (1991). Here, the court stated that it was not rendering a final ruling on the merits of whether the stocks were in fact void under Oregon law. However, the court's ruling necessarily entailed a determination of the meaning of the Oregon Business Corporation Act. The court expressly stated that its ruling was based on its understanding of Oregon law and general principles of corporate law. Therefore, to the extent that the ruling below depends on a statutory construction analysis, we agree with the defendants that we may resolve that issue as a matter of law. *Monahan v. Village of Hinsdale*, 210 Ill. App. 3d 985, 569 N.E.2d 1182 (1991); *Fischer*, 207 Ill. App. 3d 1053, 566 N.E.2d 785 (the court analyzed the propriety of a preliminary injunction under two separate standards of review); *Continental Cablevision of Cook County, Inc. v. Miller*, 238 Ill. App. 3d 774, 606 N.E.2d 587 (1992) (the court chose to address the constitutionality of a statute in reviewing the grant of a preliminary injunction noting that it was not compelled to do so).

The defendants' next argument on appeal is that the hearing below was insufficient to permit a finding that the plaintiff is entitled to injunctive relief. The defendants claim that the court below granted the injunction "without any evidentiary support" and failed to hear testimony on controverted issues of fact. The defendants also maintain that the court erred in allowing testimony on a legal issue—namely the meaning of the Oregon Act. In response, the plaintiff claims the hearing was sufficient and points out that the defendants ultimately presented testimony regarding the meaning of the Act.

■ Expert testimony concerning statutory interpretation is not proper, even if the witness is an attorney. See *Christou v. Arlington Park-Washington Park Race Tracks Corp.*, 104 Ill. App. 3d 257, 432 N.E.2d 920 (1982). Therefore, we agree with the defendants that it was not necessary or proper for the court to allow expert testimony concerning the proper interpretation of Oregon law.

Furthermore, the record shows that the circuit court informed the parties that it intended to rule only on the "limited question" of whether or not the stocks were issued in violation of Oregon law. The court stated that it would allow the plaintiff's witness to testify, over the defendants' objection. The defendants then presented contrary testimony. Thus, we must examine the sufficiency of the evidence presented and consider the substance of the court's ruling in order to determine whether the hearing below is sufficient to sustain the court's issuance of a preliminary injunction.

■ A preliminary injunction is proper when the plaintiff establishes (1) a clearly ascertainable right in need of protection, (2) irreparable harm will result if the injunctive relief is not granted, (3) no adequate remedy at law and (4) the likelihood of success on the merits. *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 601 N.E.2d 720 (1992); *Buzz Barton & Associates, Inc. v. Giannone*, 108 Ill. 2d 373, 483 N.E.2d 1271 (1985). The plaintiff had the burden of proving these four elements by a preponderance of the evidence. *Continental Cablevision*, 238 Ill. App. 3d 774, 606 N.E.2d 587. Therefore, the precise question we must answer is: Did the plaintiff meet her burden of showing, by a preponderance of the evidence, that she was entitled to a preliminary injunction.

The plaintiff maintains that she presented a twofold theory in her motion seeking injunctive relief. First, she claimed that Fleck's shares were void because they were issued in violation of Oregon law. Second, she claimed that Fleck's shares were procured through fraud. The court never considered the plaintiff's second theory in rendering its ruling. Therefore, we only consider the first issue.

The essential dispute is whether the shareholders and directors of Chefwear, Magee and Huppin-Fleck, had the authority to amend the articles of incorporation to create two different series of common stock—voting and nonvoting. The articles of amendment filed with the Oregon Secretary of State provide, in part:

> "The corporation is authorized to issue two classes of stock to be designated, respectively, as 'Common Stock' and 'Preferred Stock'. The Common Stock shall consist of two series to be designated, respectively 'Voting Common Stock' and 'Nonvoting Common Stock.' "

The provisions of the Oregon Business Corporation Act that are at issue here are sections 60.131(1) and 60.134. Or. Rev. Stat. §§ 60.131(1), 60.134 (1993). Section 60.131(1) provides:

> "The articles of incorporation must prescribe the classes of shares and the number of shares of each class that the corporation is authorized to issue. If more than one class of shares is authorized, the articles of incorporation must prescribe a distinguishing designation for each class, and prior to the issuance of shares of a class, the preferences, limitations and relative rights of that class must be described in the articles of incorporation. All shares of a class must have preferences, limitations and relative rights identical to those of other shares of the same class except to the extent otherwise permitted by ORS 60.134 and 60.157." Or. Rev. Stat. § 60.131(1) (1993).

The plaintiff contends that Fleck's shares are void because they are of the same class as those issued to Magee and Huppin-Fleck, but have different rights because they are designated as "nonvoting." The defendants respond that section 60.134 permits the creation of a series of stock within a class, provided that they are given a distinguishing designation.

Section 60.134 provides as follows:

> "(1) If the articles of incorporation so provide, the board of directors may determine, in whole or part, the preferences, limitations and relative rights, within the limits set forth in ORS 60.131, of any class of shares before the issuance of any shares of that class or one or more series within a class before the issuance of any shares of that series.
>
> (2) Each series of a class must be given a distinguishing designation.
>
> (3) All shares of a series must have preferences, limitations and relative rights identical with those of other shares of the same series and, except to the extent otherwise provided in the description of the series, of those of other series of the same class.
>
> (4) Before issuing any shares of a class or series created under this section, the corporation must deliver to the office for filing, articles of amendment which are effective without shareholder action, that set forth ***." Or. Rev. Stat. § 60.134 (1993).

■ To determine the proper construction of the Oregon statutes at issue, we must look to Oregon case law. See *Wisdom v. Stonewall Insurance Co.*, 139 Ill. App. 3d 1082, 487 N.E.2d 1289 (1986). A search of Oregon cases reveals that its courts have not considered the statutes before us. "Where a statute has not been construed by the courts of the State in which it was enacted, a court of another jurisdiction in which a question with respect to the effect of such statute

arises may place its own construction thereon." *Ray Schools-Chicago-Inc. v. Cummins*, 12 Ill. 2d 376, 380, 146 N.E.2d 42, 45 (1957).

Because rules for statutory construction are means for ascertaining substance, those employed in the enacting state are most relevant. See 2 N. Singer, Sutherland on Statutory Construction § 37.01, at 117 (Sands 5th ed. 1992). Therefore, in construing the Oregon statutory provisions here, we turn to principles of statutory construction adhered to by Oregon courts. See 2 N. Singer, Sutherland on Statutory Construction § 37.05, at 124 (Sands 5th ed. 1992) ("the rules of the state in which the statute was enacted should be followed if they have been pleaded and proved").

In *Portland General Electric Co. v. Bureau of Labor & Industries*, 317 Or. 606, 859 P.2d 1143 (1993), the Oregon Supreme Court set forth a clear mechanism for interpreting statutes. At the first level of analysis, it is the court's task to discern the intent of the legislature by examining both the text and the context of the statute. The text of the statute is the best indication of legislative intent (*Portland General Electric*, 317 Or. at 610, 859 P.2d at 1146), and a court should consider rules of construction that bear directly on how to read the text. See Or. Rev. Stat. § 174.010 (1993). In considering the context of a statute, the court should examine other provisions of the same statute and other related statutes. *Portland General Electric*, 317 Or. at 611, 859 P.2d at 1146.

If after this first level of inquiry the statute's meaning remains unclear, then the court may consider the legislative history. A court is permitted "to resort to general maxims of statutory construction to aid in resolving the remaining uncertainty" as a final level of analysis. *Portland General Electric*, 317 Or. at 612, 859 P.2d at 1146.

█ In the present case, the plaintiff maintains that because the issuance of shares to Fleck clearly did not comply with the requirements of section 60.131, we must look to section 60.134 to determine whether Fleck's shares are void. The plaintiff then argues that Fleck's shares were not issued in compliance with section 60.134. Essentially, the plaintiff suggests that the requirements of subsections (1), (2), (3) and (4) all must be met before two different series of the same class of stock may be issued. Therefore, we must determine whether each of the four subsections is dependent on the other, or whether each should be read separately as the defendant suggests.

Turning to the text of section 60.134, we find the plaintiff's argument concerning the legislative intent unpersuasive. The plaintiff ignores the clear language and punctuation of the text of section 60.134. We note that all four subsections of section 60.134 end with a period. Subsection (2) clearly permits the creation of a series of stock

within a class provided that it carries a distinguishing designation. See Or. Rev. Stat. § 60.134(2) (1993). According to the plain language of the statute, as well as its context, we discover that a series is intended to be viewed as a subset of a class of stock. It follows therefore, that the aspect of section 60.131 which authorizes the creation of a class of stock necessarily permits the creation of a subset of a class—a series.

Also, section 60.134(1) does not prohibit the creation of a series within a class, with different rights. Section 60.134(1) states:

> "If the articles of incorporation so provide, the board of directors may determine, in whole or part, the preferences, limitations and relative rights *** of any class of shares ***." Or. Rev. Stat. § 60.134(1) (1993).

We agree with the defendants that nothing in this section requires that the articles must give the board of directors this power before a series of stock may be created.

Furthermore, among the rules which bear on the interpretation of the context of a statute is section 174.540, which provides:

> "Title heads, chapter heads, division heads, section and subsection heads or titles, and explanatory notes and cross references, in the statute laws described in ORS 174.510(1) and in parts of Oregon Revised Statutes, do not constitute any part of the law." Or. Rev. Stat. § 174.540 (1993).

Thus, we do not consider the section heading of section 60.134 as bearing on our interpretation of its subsections, as the plaintiff suggests.

If a question remains concerning the proper interpretation of the statutory provisions at issue, the legislative history erases any uncertainty. The task force report (Report), which details the source and basis for the Oregon Business Corporation Act, indicates that in some contexts there may be no difference between a class and a series within a class of stock, and that the labels are often a matter of convenience. *The Task Force Report: Oregon Revised Model Business Corporation Act*, 30 Willamette L. Rev. 407, 426-27 (1994).

Additionally, the Report indicates that sections 60.131 and 60.134 were derived from sections 6.01 and 6.02 of the Model Business Corporation Act (Model Act). 30 Willamette L. Rev. at 426 (1994). The official comments to the Model Act provide that the articles of incorporation may create a series of shares within a class. Revised Model Business Corporation Act, at 93 (1984). Finally, the parties agree that the Oregon Act was intended to allow corporations flexibility in raising capital.

The interpretation of the Oregon Act suggested by the plaintiffs

is contrary to the intent of the legislature as evidenced by the text and context of the Act and as verified by the history of the Act. Therefore, based on the foregoing, we conclude that the Oregon Business Corporation Act permits the creation of a series of a class of stocks with different voting rights, provided that the series carries a distinguishing designation. Here, the articles of amendment provide for two series of common stock, voting and nonvoting. The distinguishing designations are clear. Thus, it is not readily apparent that the plaintiff has established a likelihood of success on the merits of her claim that the shares issued to Fleck are void because they violate Oregon law by allowing different rights within the same class.

We find that the plaintiff did not present evidence sufficient to meet her burden of establishing the need for a preliminary injunction by a preponderance of the evidence. Our decision here merely resolves a dispute which centers around the proper interpretation of the statutory provisions at issue. We do not render a final determination as to whether the stocks issued to Fleck are in fact void. As such, we find it necessary to remand this case for further proceedings. We further note that the court below never reached the plaintiff's second theory that Fleck's shares were procured through fraud.

Remanded for further proceedings consistent with this opinion.

HOFFMAN, P.J., and CAHILL, J., concur.