DENNIS CLEMONS, Plaintiff-Appellee and Cross-Appellant, v. MECHANICAL DEVICES COMPANY, Defendant-Appellant and Cross-Appellee.

Fourth District    No. 4—97—0020

Argued July 22, 1997.—Opinion filed September 9, 1997.

244

COOK, J., dissenting.

William F. Costigan and John Casey Costigan (argued), both of Costigan & Wollrab, P.C., of Bloomington, for appellant.

James P. Ginzkey (argued), of Hayes, Hammer, Miles, Cox & Ginzkey, of Bloomington, for appellee.

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

In January 1995, plaintiff, Dennis Clemons, filed a complaint against defendant, Mechanical Devices, Company (Mechanical), alleging that Mechanical had wrongfully discharged him in retaliation for his filing a workers' compensation claim. In October 1996, a jury returned a verdict for Clemons and against Mechanical and awarded him compensatory damages of $63,520.23.

Mechanical appeals, arguing that the trial court erred by (1) admitting evidence regarding the Illinois Wage Payment and Collection Act (Wage Act) (820 ILCS 115/1 *et seq.* (West 1994)) and instructing the jury on portions of that act; (2) allowing a lay witness to interpret statutory law; (3) allowing Clemons to amend his complaint following the close of evidence; (4) denying Mechanical's motion for judgment on the grounds of *res judicata*; (5) denying Mechanical an opportunity to cross-examine Clemons as to his testimony at an administrative hearing; (6) refusing to allow a witness to testify regarding payments made by Clemons' health insurance company; (7) refusing to give Mechanical's nonpattern jury instruction defining "at will" employment to the jury; and (8) allowing the jury to consider emotional distress as an element of damages. Mechanical also argues that the verdict was against the manifest weight of the evidence.

Because we agree with Mechanical's first argument—namely, that the trial court erred by admitting evidence regarding the Wage Act and instructing the jury on portions of that act—we reverse and remand for a new trial.

I. BACKGROUND

In January 1995, Clemons filed a complaint against Mechanical, alleging that Mechanical had wrongfully discharged him in retaliation for his filing a workers' compensation claim. This case was tried before a jury during September and October 1996, and the evidence showed the following. Mechanical, located in Bloomington, Illinois, did design, engineering, and machine shop work.

In August 1988, Clemons began working at Mechanical as a machine operator. He told Mechanical's staff that he had previously had back surgery. On June 1, 1989, Clemons injured his back at work while lifting machine parts. He reported the injury to his foreman, Clarence Hatfield, and the following day (at the direction of Irene Sperry, a co-owner of Mechanical), he saw Dr. Larry Nord, who prescribed pain medication. Although Nord advised Clemons not to return to work, he did so that same day and worked the rest of June without further injury. Mechanical's workers' compensation carrier processed and paid the bills incurred as a result of the June 1989 injury.

On July 1, 1989, Clemons heard his back "pop" while he was working, yet he worked the remainder of his shift. Upon leaving work that day, he told Hatfield that his back was "still bothering" him and he was going to take it easy over the weekend. Hatfield testified that he recalled Clemons reporting the June 1989 incident; however, he did not recall Clemons reporting an injury on July 1, 1989. Linda Fillingham, Mechanical's office manager, testified that she did not receive notice on July 1, 1989, that Clemons injured himself. Clemons testified that he stayed flat on his back "the whole weekend," and his back pain was in the same place as it was after the June 1989 injury.

On Monday, July 3, 1989, Clemons' back "popped" while he was bending over to tie his shoes at home. He telephoned Fillingham and told her that he was not coming to work because he hurt his back while tying his shoes. Fillingham told him that she would send him a health insurance form to complete. Clemons testified that he had a conversation with Irene, who told him that she "knew this [(the July 1989 injury)] was not workmen's comp[ensation] and if [he] filed it that way, [he] would be discharged." Clemons also stated that he believed Irene because "she doesn't say anything without meaning it." At some point after speaking with Irene, Clemons (with his wife's assistance) completed the health insurance form, signed it, and returned it to Mechanical. The form, as filled out by Clemons and his wife on July 13, 1989, indicated that the July 1989 injury was not work related.

Clemons also stated that someone from Mechanical called Nord's office and told Nord's secretary not to file the July 1989 injury as a workers' compensation claim. Fillingham acknowledged that she had a telephone conversation with Nord on July 10, 1989, during which she told him to keep his records straight between the June 1989 injury (which was being processed as a workers' compensation claim) and the July 1989 injury (which was being processed by Mechanical's health insurance company).

Clemons' wife, Janetta, testified that on July 3, 1989, she heard "a loud pop" from Clemons' back as he was preparing to go to work. Later that same day (after Clemons spoke with Fillingham), they received a telephone call from Irene. When Janetta told Irene that Clemons was not available, Irene said that she did not like "to get the wives involved in things like this" and hung up.

Clemons returned to work on Thursday, July 27, 1989. He worked that day and Friday, July 28, 1989. He previously had elected to take the next week (July 29, 1989, through August 4, 1989) as a vacation week.

On August 2, 1989, Clemons talked with an attorney, Kevin Miller, at the Janssen Law Center (Janssen). On that same day, Clemons signed a blank workers' compensation application in Miller's office. Miller testified that he telephoned Mechanical that same day and asked the identity of the company's workers' compensation carrier. Someone at Mechanical told him that such a request must be submitted in writing. Janssen's subpoenaed telephone records did not show that Miller made a telephone call to Mechanical. However, Miller stated that all of the telephone records may not have been produced. Miller also stated that Clemons was hesitant to file a workers' compensation claim; nonetheless, Miller proceeded with the claim on August 2, 1989.

On August 4, 1989, Clemons went to Mechanical and told them that he wanted his paycheck for Thursday, July 27, 1989, and Friday, July 28, 1989. He was told that he would be paid for those two days on August 11, 1989, in the following week's regular check, thus making a full week's check. This was the same way vacation had been paid to all Mechanical employees for previous vacation periods. Mechanical paid its employees on Fridays for the previous Thursday through Wednesday pay period and paid them for vacations one week in advance. Miller called and told someone at Mechanical that they could not hold the two days' pay. Fillingham told Miller that Clemons could receive a paycheck for those days, but if he took his pay in a manner different from all other employees, he would no longer be employed by Mechanical. Fillingham also testified that Clemons quit when he chose to be paid differently from all other employees and he was not fired because he retained an attorney to file a workers' compensation claim.

Barb Gullett, Nord's receptionist, testified that when Clemons came to Nord's office for the June 1989 injury, he filled out a workers' compensation patient questionnaire. The first bill sent out by Nord's office had a "WC" (workers' compensation) designation. A bill dated July 27, 1989, also contained a "WC" designation, but Gullett

had crossed through that entry and written "personal injury 7-3-89." Gullett stated that Nord gave her that information. Prior to the July 10, 1989, telephone call with Fillingham, all of Nord's records contained a "WC" designation. After the phone conversation, all of the records relating to the July 1989 injury were changed to reflect a personal injury designation.

On August 8, 1989, Mechanical received an application for adjustment of claim stating that the July 1989 injury was work related. At that time, Fillingham put the health insurance forms on hold until she could determine whether the injury was work related. She also stated that she voided some of the health insurance checks and sent letters to health providers indicating that Mechanical would not pay any health-related medical bills. In her testimony during Mechanical's case in chief, Fillingham stated that she had incorrectly testified that Mechanical had paid none of Clemons' health-related medical bills because she previously did not have access to all of the pertinent records. She further stated that when Clemons submitted bills to Mechanical for the July 1989 injury, Mechanical's health plan paid them (except for Clemons' deductible and co-pay portions). Mechanical did not pay other medical bills which were not submitted to it.

After the Industrial Commission denied his workers' compensation claim for the July 1989 injury, Clemons resubmitted his bills to Mechanical's health insurance provider. According to Clemons, Mechanical never submitted the bills to its health insurance company.

Randy Griffin, a former Mechanical employee, testified that he sustained a hernia while lifting a block at work. He reported his injury to Mechanical, and it instructed him to complete a health insurance form. Fillingham subsequently requested that he write a statement that his injury did not occur at work. Griffin refused to do so because he believed it happened at work. Griffin stated that he never had any intention of filing a workers' compensation claim; however, he did not want to write the requested statement. That same day, Irene told him he was no longer needed as an employee.

On this evidence, the jury returned a verdict for Clemons and against Mechanical and awarded him compensatory damages of $63,520.23.

## II. RELEVANCE OF THE WAGE ACT

Mechanical first argues that the trial court erred by admitting evidence regarding the Wage Act and instructing the jury on portions of that act. Specifically, Mechanical contends the Wage Act was irrelevant to the issues in this case. In response, Clemons argues that

evidence regarding the Wage Act was relevant, not because he based his claim upon a violation of the Wage Act, but because Mechanical proffered as a defense that Clemons demanded that he be paid differently from all other employees. We conclude that evidence regarding the Wage Act was wholly irrelevant to the issues in this case.

## A. Relevance of the Wage Act to Clemons' Claim of Retaliatory Discharge

Clemons' initial complaint alleged that "in retaliation for filing the worker's compensation claim, [Mechanical] wrongfully discharged [Clemons]." Clemons' amended complaint (filed after the close of all evidence) alleged, in relevant part:

"10. *** [Mechanical] intentionally interfered with and restrained [Clemons'] rights under the Workers' Compensation Act in violation of 820 ILCS 305/4(h) [(West 1994)].

* * *

13. *** [I]n retaliation of [Clemons'] exercise of his statutory rights, [Mechanical] wrongfully discharged [Clemons]."

During trial court arguments on Clemons' motion for leave to file an amended complaint, he stated as follows:

"That [(the Wage Act)] is not what we are alleging in this case; that is what [Mechanical] is alleging as [its] reason for terminating [Clemons]. Our complaint alleges that [Clemons] was terminated in retaliation for his filing of a workers' compensation claim. The [Wage Act] came up *** as Mechanical Devices' defense in this case."

Prior to granting Clemons leave to file an amended complaint, the court specifically noted that the "statutory rights" referred to in paragraph 13 of the amended complaint "are in fact the workmen's comp[ensation] statutory rights."

■ Thus, the *only* allegation of retaliatory discharge properly before the jury involved Clemons' filing a workers' compensation claim. To prove a retaliatory discharge for filing a workers' compensation claim, a plaintiff must show that (1) he was an employee before the injury; (2) he exercised a right granted by the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 1994)); and (3) he was discharged and the discharge was causally related to his filing a claim under the Workers' Compensation Act. *Gonzalez v. Prestress Engineering Corp.*, 194 Ill. App. 3d 819, 823, 551 N.E.2d 793, 796 (1990). Accordingly, Clemons did not have to show that Mechanical had violated the Wage Act in order to prove a retaliatory discharge for filing a workers' compensation claim.

## B. Relevance of the Wage Act to Mechanical's Defense

Although Clemons agrees that he did not allege that Mechanical

wrongfully discharged him in violation of the Wage Act, he nonetheless contends that evidence regarding that act and whether Mechanical violated it was relevant because Mechanical proffered as a defense that Clemons ended his employment with Mechanical as a result of his demand that he be paid differently from other employees. We disagree.

■ As Clemons correctly points out, in *Miller v. J.M. Jones Co.*, 225 Ill. App. 3d 799, 803, 587 N.E.2d 654, 658 (1992), this court discussed the three-tier allocation of proof in Civil Rights Act cases (42 U.S.C. § 2000e *et seq.* (1994)), as described by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973), although in *Miller* we called it the "standard of proof." In *Miller*, we noted that some courts utilize that standard in retaliatory discharge cases. Under the three-tier allocation of proof, the plaintiff makes out a minimal *prima facie* case of retaliatory discharge. Once the plaintiff does this, the burden shifts to the defendant to rebut the *prima facie* case by presenting some legitimate, nonretaliatory reason for the plaintiff's discharge. If the defendant meets his burden, the presumption raised by the *prima facie* case is rebutted, and the plaintiff must satisfy the ultimate burden of proof by showing that the defendant's reason for the discharge is pretextual. See *Miller*, 225 Ill. App. 3d at 803, 587 N.E.2d at 658.

In *Miller*, however, this court neither applied nor adopted the three-tier allocation of proof in retaliatory discharge cases. To the extent that other courts have adopted that allocation of proof in such cases (see *Hugo v. Tomaszewski*, 155 Ill. App. 3d 906, 508 N.E.2d 1139 (1987); *Bragado v. Cherry Electrical Products Corp.*, 191 Ill. App. 3d 136, 547 N.E.2d 643 (1989)), we decline to follow them. In the context of a retaliatory discharge claim, it would simply make no sense to *require* the defendant to put forth a legitimate, nonretaliatory reason for its discharge of the plaintiff. As our supreme court wrote in *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 159, 601 N.E.2d 720, 728 (1992):

> "Despite the revolutionizing effect of *Kelsay* [*v. Motorola, Inc.*, 74 Ill. 2d 172, 384 N.E.2d 353 (1978)], the common law doctrine that an employer may discharge an employee-at-will for *any reason* or for *no reason* remains the law in Illinois. [Citation.] *Kelsay* only excepts discharges which violate a clearly mandated public policy." (Emphasis added.)

In *Kelsay*, the supreme court first recognized the tort of retaliatory discharge as an exception to the general rule that "at-will" employment is terminable at any time for any reason or no reason.

In addition, as this court wrote in *Foiles v. North Greene Unit*

*District No. 3*, 261 Ill. App. 3d 186, 188-89, 633 N.E.2d 24, 26 (1994), quoting 30 C.J.S. Employer-Employee Relationship § 35, at 67, § 40, at 70-71 (1992):

" '[A]t common law the right of the employer to terminate the employment is *unconditional* and *absolute.*'

\* \* \*

'\*\*\* [A]n employment for an indefinite term may be terminated at the will of either party, regardless of the length of service, for or *without cause,* and *without giving any reason or explanation* therefor \*\*\*.' " (Emphasis added.)

Because the common law doctrine of employment at will continues to be the law of this state, we hold that the three-tier allocation of proof that applies in the Civil Rights Act cases does not apply in the context of retaliatory discharge claims. Thus, the defendant in a retaliatory discharge action is not required to put forth evidence of a legitimate, nonretaliatory reason (or, for that matter, *any* reason) for its discharge of the plaintiff. To hold otherwise would essentially abrogate the common law doctrine of employment at will.

However, the defendant *may choose* to provide a reason for its discharge of the plaintiff. The supreme court has held that "[t]he element of causation is not met if the employer has a valid basis, which is not pretextual, for discharging the employee." *Hartlein*, 151 Ill. 2d at 160, 601 N.E.2d at 728. In this regard, we reject Clemons' contention that the causation element is satisfied merely because the defendant states that it fired the plaintiff for an invalid (illegal) reason unrelated to the retaliatory discharge claim. Considering that (1) a retaliatory discharge claim is a narrowly circumscribed exception to the common law doctrine of employment at will, and (2) the ultimate issue concerning the causation element is the employer's *motive* for discharging the employee (see *Hartlein*, 151 Ill. 2d at 163, 601 N.E.2d at 730), we hold that a "valid basis" means valid *in the context of plaintiff's claim of retaliatory discharge for plaintiff's having filed a claim under the Workers' Compensation Act.*

Such a valid basis may indeed be "invalid" in other contexts. For example, a defendant may proffer as a reason for its discharge of a plaintiff-employee that the employee was discharged because of (1) his age (see *Mein v. Masonite Corp.*, 124 Ill. App. 3d 617, 618, 464 N.E.2d 1137, 1139 (1984) (where the court held that plaintiff could not state an independent cause of action for wrongful discharge on the basis of age because of the comprehensive remedies provided in the Illinois Human Rights Act (775 ILCS 5/1—101 *et seq.* (West 1994)))); (2) the employee's gender (actionable pursuant to the Civil Rights Act of 1964 as amended by the Equal Employment Op-

portunity Act of 1972 (42 U.S.C. § 2000e (1994))); or (3) the employee's disability (actionable pursuant to the Illinois Human Rights Act (see 775 ILCS 5/1—101 *et seq.* (West 1994))). Thus, the defendant in a retaliatory discharge action—if it so chooses—may provide *any* reason for its discharge of the plaintiff, so long as the reason is not part of the plaintiff's claim of retaliatory discharge for his having filed a workers' compensation claim.

Applying these principles to the present case, Mechanical was not required to provide any reason for its discharge of Clemons. However, it chose to proffer a reason, namely, that Clemons demanded to be paid differently from all other Mechanical employees and contrary to the manner in which employees always had been paid for weeks partially worked that abutted vacation weeks. That reason was "valid" in the context of a retaliatory discharge claim. Whether Mechanical was violating the Wage Act (see 820 ILCS 115/1 *et seq.* (West 1994)) is wholly irrelevant to the trier of fact's ultimate causation determination, namely, whether Mechanical wrongfully discharged Clemons *for filing a workers' compensation claim.*

■ In this case, the trial court repeatedly allowed in testimony regarding the Wage Act, including erroneously allowing Fillingham to read and interpret portions of the Wage Act to mean that Mechanical's method of payment violated the Wage Act. See *Town of the City of Bloomington v. Bloomington Township*, 233 Ill. App. 3d 724, 735, 599 N.E.2d 62, 69 (1992) ("A court should not permit opinion on a question of law [citations] unless the court is dealing with a question of foreign law"); see also *Magee v. Huppin-Fleck*, 279 Ill. App. 3d 81, 86, 664 N.E.2d 246, 249 (1996) (expert testimony concerning statutory interpretation is not proper, even if the witness is an attorney). Because the Wage Act is irrelevant to the issues in the present case, we hold that the court clearly abused its discretion by allowing in any testimony regarding that act. See *Gill v. Foster*, 157 Ill. 2d 304, 312-13, 626 N.E.2d 190, 194 (1993) (a reviewing court will not reverse a trial court's admission of evidence on relevance grounds absent a clear abuse of discretion).

### C. Prejudice to Mechanical

Mechanical further contends that the admission of the evidence regarding the Wage Act—particularly when viewed together with the trial court's instructing the jury on that act and Clemons' statements during closing argument—"served only to confuse the jury and severely prejudiced [Mechanical]." We agree.

■ The trial court instructed the jury (at Clemons' request) essentially as follows. The Wage Act provides that all wages earned by

an employee during a weekly pay period shall be paid no later than seven days after the end of the weekly pay period in which the employee earned the wages. Further, any employer who knowingly discharges or discriminates against an employee because that employee (1) has complained to the employer, the State Director of Labor, or his authorized representative, that the employer has not paid him in accordance with the Wage Act, or (2) has instituted a proceeding under or related to the Wage Act, or (3) has testified or is about to testify in an investigation or proceeding under the Wage Act, is guilty, upon conviction, of a Class C misdemeanor.

This instruction was a modified version of Illinois Pattern Jury Instructions, Civil, No. 60.01 (3d ed. 1995) (hereinafter IPI Civil 3d) and, as such, should not be given unless some evidence existed to support a finding that the defendant's violation of the statute was the proximate cause of the plaintiff's injury. *French v. City of Springfield*, 65 Ill. 2d 74, 81, 357 N.E.2d 438, 441-42 (1976); see also IPI Civil 3d No. 60.01, Notes on Use (which provides that "[t]his instruction should be given only where the evidence would support a finding that the injury complained of was proximately caused by a violation of a statute").

Because the Wage Act is irrelevant to the issues in this case, this instruction may have confused the jury as to the issues before it and prejudiced Mechanical in its defense—which was that Clemons left because of a dispute over how Mechanical paid his wages. Thus, it was critical to Mechanical's defense that the jury understood that the only determination it needed to make regarding Mechanical's payment method was whether Clemons' demand to be paid differently than other employees constituted Mechanical's motive for discharging him.

In addition, the effect of this erroneous instruction was heightened during closing argument, when Clemons stated as follows:

"[Clemons' attorney]: If Mechanical Devices starts discharging their at-will employees because of the color of their skin, they are liable. If they start discharging their employees for their gender, they are liable. If they start discharging their employees in *violation of Illinois statute, they are liable*. It is as simple as that. *Read the statute.*" (Emphasis added.)

This comment—which the jury could easily have understood to be a reference to the Wage Act (the "statute" that the court quoted to the jury at Clemons' request)—may well have confused the jury regarding the issues before it and whether a violation of the Wage Act could support a finding of retaliatory discharge.

Under the circumstances of this case, we conclude that the trial

court's error in admitting evidence regarding the Wage Act and instructing the jury on that statute—when viewed together with Clemons' comments during closing argument—seriously prejudiced Mechanical in its defense so as to deprive Mechanical of a fair trial. Accordingly, we reverse the judgment for Clemons and remand for a new trial.

## III. ISSUES ON REMAND

Although we have determined this case must be remanded for a new trial, Mechanical raises other issues that will likely arise on remand. We address these issues separately.

### A. The Trial Court's Refusal To Allow Mechanical To Cross-Examine Clemons as to His Testimony at the DES Hearing

■ Mechanical argues that the trial court erred by refusing to allow it to cross-examine Clemons regarding what he testified to at a hearing in 1989 before the Department of Employment Security (DES) on Clemons' claim for unemployment compensation. We disagree.

Where the language expressed in a statute is clear and unambiguous, a court's proper function is to enforce the law as enacted by the legislature. *Hinojosa v. Joslyn Corp.*, 262 Ill. App. 3d 673, 677, 635 N.E.2d 546, 549 (1994). A court construing a statute should read it as a whole, give the statutory language its plain meaning, and import to the statute the fullest possible meaning to which it is susceptible. *Central Illinois Public Service Co. v. Illinois Commerce Comm'n*, 268 Ill. App. 3d 471, 484, 644 N.E.2d 817, 826 (1994). Further, in *Howard v. Forbes*, 185 Ill. App. 3d 148, 152, 541 N.E.2d 685, 688 (1989), this court held that "the court must enforce the statutory privilege [of section 1900 of the Unemployment Insurance Act (Insurance Act) (Ill. Rev. Stat. 1987, ch. 48, par. 640)] as enacted without resorting to other interpretation tenets."

Section 1900(A) of the Insurance Act now provides as follows:

"Except as provided in this Section, information obtained from *any individual* or employing unit during the administration of this Act shall:

1. be confidential,

2. not be published or open to public inspection,

3. not be used in any court in any pending action or proceeding,

4. not be admissible in evidence in any action or proceeding other than one arising out of this Act." (Emphasis added.) 820 ILCS 405/1900(A) (West 1994).

We note that this section included the same language in its 1989 ver-

sion, which was in effect at the time of the DES hearing. See Ill. Rev. Stat. 1989, ch. 48, par. 640.

Giving this statutory language its plain and fullest possible meaning, we conclude that "information obtained from *any* individual" means just that and thereby prevents disclosure of information obtained from the claimant in any action or proceeding arising outside of the Insurance Act. To the extent *McMahon v. Richard Gorazd, Inc.*, 135 Ill. App. 3d 211, 224, 481 N.E.2d 787, 796 (1985), holds otherwise, we decline to follow it. Thus, we conclude that cross-examination of Clemons regarding what he testified to at the 1989 DES hearing is prohibited by section 1900(A) of the Insurance Act. Accordingly, we hold that the trial court did not err by refusing to allow Mechanical to cross-examine Clemons as to his testimony at the 1989 DES hearing.

### B. The Trial Court's Refusal To Allow a Witness To Testify Regarding Payments Made by Clemons' Health Insurance Company

The material in this section is not to be published pursuant to Supreme Court Rule 23. 166 Ill. 2d R. 23.

### C. The Trial Court's Refusal To Give Mechanical's Nonpattern Instruction Defining "At Will" Employment to the Jury

The material in this section is not to be published pursuant to Supreme Court Rule 23.

### D. Punitive Damages

The material in this section is not to be published pursuant to Supreme Court Rule 23.

### IV. CONCLUSION

For the reasons stated, we reverse and remand for a new trial consistent with the views expressed herein.

Reversed and remanded.

McCULLOUGH, J., concurs.

JUSTICE COOK, dissenting:

I respectfully dissent. I would affirm the judgment of the trial court.

The Wage Act provides that "[a]ll wages earned by any employee during a weekly pay period shall be paid not later than 7 days after the end of the weekly pay period in which the wages were earned." 820 ILCS 115/4 (West 1994). Clemons worked Friday, July 28, and

Saturday, July 29. The pay period that included those days ended Wednesday, August 2. On the next payday, Friday, August 4, while he was on vacation, Clemons asked to be paid for July 28 and 29. Mechanical responded that he would not be paid for those days until Friday, August 11. Mechanical finally did pay Clemons on August 4, but discharged him that same day. The Wage Act did not require that Clemons be paid on August 4, but the Wage Act did not allow Mechanical to wait until August 11.

The trial court held that an illegal defense is no defense and allowed the jury to determine whether Mechanical's defense was an illegal defense, whether the Wage Act had been violated. If Mechanical had conceded that it had violated the Wage Act, the trial court apparently would have kept out any evidence of that reason for firing Clemons, whether that evidence was presented by Clemons or by Mechanical. In determining that an illegal defense is no defense, the trial court relied in part upon our statement in *Miller* that the employer should adduce "some evidence of lawful motivation for the challenged action." *Miller*, 225 Ill. App. 3d at 803, 587 N.E.2d at 658. *Miller*, however, was referring to the three-tier formula of the Civil Rights Act cases, which I agree should not be applied to retaliatory discharge cases. I also agree with the majority (292 Ill. App. 3d at 250) that "valid basis" or "lawful motivation," as used in earlier cases, simply meant a basis or motivation that would defeat a claim of retaliatory discharge under Illinois law.

Nevertheless, the question whether an illegal defense can be a defense in a retaliatory discharge case must be addressed. Should an employer really be allowed to profit from its own illegal conduct and tell the jury, "I fired plaintiff because he was black," or "I fired plaintiff because she was a woman"? Such defenses are usually counterproductive because they are offensive to juries, but in the present case the jury would not have known Mechanical's conduct was (arguably) illegal unless it were given that information. The statement is sometimes made that at common law an employee at will can be discharged at any time, "for a good reason, a bad reason, or no reason at all." *Ryherd v. General Cable Co.*, 124 Ill. 2d 418, 427, 530 N.E.2d 431, 435 (1988). The fact that a particular "bad reason" cannot be used offensively in a retaliatory discharge case, however, does not require that such "bad reason" be allowed to be used defensively. It is possible to limit the employee's argument to the question of whether he was fired in violation of the Workers' Compensation Act without allowing the employer to argue the employee was fired because he was black, *et cetera*. Of course, the failure to present a reason for discharge will make it difficult for the

employer to succeed. See *Wieseman v. Kienstra, Inc.*, 237 Ill. App. 3d 721, 733, 604 N.E.2d 1126, 1135 (1992) (Chapman, J., dissenting) (most cases find in worker's favor unless employer had a reason for discharge).

Mechanical argues that an employee has other forums and remedies available if he or she is fired because of race, gender, age, disability, or in violation of the Wage Act. It is common, however, for wrongful acts to carry collateral consequences. The law is reluctant to allow a wrongdoer to profit from his own wrong, particularly where he seeks to enlist the aid of the court in doing so. For example, the courts will not enforce a check given in payment of a gambling debt. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 119, 619 N.E.2d 732, 737 (1993). The fact that other remedies exist is no answer to the question whether an illegal defense can be a defense.

Mechanical argues that there can be no showing that the Wage Act has been violated without a labor board finding to that effect. That is not correct. Evidence of other crimes, wrongs, or acts may be admitted without showing that there has been a conviction. The proponent must show that a crime took place and that the defendant committed it, but that proof need not be beyond a reasonable doubt, only by more than a mere suspicion. *People v. Oaks*, 169 Ill. 2d 409, 454, 662 N.E.2d 1328, 1348 (1996).

Even if an illegal defense is a defense, I disagree with the majority's argument that Mechanical's violation of the Wage Act was "wholly irrelevant." 292 Ill. App. 3d at 248. The issue is whether Mechanical's motive was to discharge Clemons because of his workers' compensation claim or whether the motive was to discharge him because of his complaints about being paid late (or perhaps both). When a litigant argues it had a certain motive in performing an act, it is relevant that such motive would result in a violation of the criminal law. We should not assume that Mechanical is equally willing to engage in conduct that violates the criminal law and conduct that does not. The criminal code may be viewed as a standard of conduct by which most individuals and employers abide. Evidence is relevant if it has any tendency to make the existence of any fact of consequence more or less probable. Relevant evidence is admissible even when it is prejudicial to the opponent. See *People v. Kidd*, 175 Ill. 2d 1, 37, 675 N.E.2d 910, 927 (1996) (gruesome photographs). Evidence of other crimes is admissible if it is relevant for any purpose other than to show propensity to commit crime. *People v. Jones*, 156 Ill. 2d 225, 239, 620 N.E.2d 325, 330 (1993). Mechanical should not be allowed to avoid the relevant implications of its actions just because those actions put Mechanical in a bad light.

The trial court took the position that only a violation of the Workers' Compensation Act, and not a violation of the Wage Act, could be a basis for recovery in a retaliatory discharge action. Under that view, the evidence of a Wage Act violation was admissible for some purposes, but could not be the basis for a finding of liability or an award of damages, and a limiting instruction was necessary. Defendant's jury instruction No. 40 would have told the jury that employment was presumed to be at will, that at-will employees could be terminated for any reason or no reason at all, and "if you find Dennis Clemons' filing of a workers' compensation claim was not the determinative factor in Dennis Clemons' discharge, you must decide in favor of Mechanical Devices." The jury instruction had some merit, although a better statement would have been whether the claim was "*a* determinative factor." The court did give defendant's jury instruction No. 10, listing the elements Clemons had to prove, including "that Dennis Clemons' filing of a claim under the Workers' Compensation Act resulted in his discharge from his employment." A limiting instruction was necessary in this case, and non-IPI jury instructions had to be given (there are no specific instructions for retaliatory discharge in IPI), but I cannot say that defendant's jury instruction No. 40 would have improved upon the instructions already given. Under defendant's jury instruction No. 10, defendant was free to argue to the jury that a violation of the Wage Act could not be a basis for liability and that the jury had to find that defendant intended to retaliate for plaintiff's filing of a workers' compensation claim before plaintiff could recover.

A major concern here is the argument that plaintiff sandbagged defendant, that the pleadings alleged a violation of the Workers' Compensation Act, but plaintiff proved up a violation of the Wage Act. Under the facts of this case it would have been improper for plaintiff to amend his pleadings to change theories at the close of the evidence. See *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 467-68, 605 N.E.2d 493, 508 (1992) (other party would be prejudiced or surprised by the proposed amendment). The trial court made it clear, however, that it was not allowing a change of theories, that there was no retaliatory discharge action for a violation of the Wage Act. Because there was no change of theories, the amendment was not particularly significant. Defendant argues the jury was nevertheless confused and impermissibly awarded damages for a violation of the Wage Act. The trial court recognized that an award on that basis would be improper and took the steps it deemed necessary to prevent it. Defendant does not suggest other steps that should have been taken, except to argue that evidence of the Wage Act violation should

have been excluded entirely, with which I disagree. If the evidence of the Wage Act violation is viewed, not as a change of theory, but as impeachment of defendant's witnesses, there was no unfair prejudice or surprise in this case. See *Flynn v. Edmonds*, 236 Ill. App. 3d 770, 785, 602 N.E.2d 880, 889 (1992) (if impeaching information must be disclosed before trial, witness will either not appear or will change testimony).

Mechanical argues that its office manager, Fillingham, was improperly "allowed" to interpret statutory law. It is certainly improper for a witness to testify what the law is. The jury takes its law from instructions given it by the judge, not from the testimony of witnesses. See *Bloomington*, 233 Ill. App. 3d at 735, 599 N.E.2d at 69. When the issue is whether a party has knowingly violated a statute, however, it is appropriate to ask that party (1) whether it was aware of the statute, (2) is this a common statute of which employers should be aware, (3) whether it agrees the statute was violated, and (4) how can it be said the statute was not violated when the statute provides X, and the facts are Y? See *Selby v. Danville Pepsi-Cola Bottling Co.*, 169 Ill. App. 3d 427, 437, 523 N.E.2d 697, 702 (1988). If Clemons were really attempting to have a witness interpret the law, it would be unlikely that he would use Mechanical's office manager as that witness.

Mechanical complains that the court read a portion of the Wage Act to the jury as a part of its instructions, but assuming the Wage Act was relevant at all to the case, it had to be brought to the jury's attention in some manner. The proper way for a jury to be told of the law that applies to the case is through the instructions given it by the court. I do not consider the instruction given to be an IPI Civil No. 60.01 instruction.

Fillingham testified she voided some of the health insurance checks and sent letters to health providers indicating that Mechanical would not pay health-related medical bills. That testimony shows malice on the part of Mechanical. Clemons was entitled to payment of his bills from one source or the other, the health insurer or the workers' compensation insurer. If the claim were later determined to be job-related, the insurer would have been entitled to a credit for payments already made under the health policy. When Fillingham returned to the stand, she changed her testimony and said that the medical bills were paid under the health policy. Clemons testified the bills were not paid and were turned over to a collection agency. Mechanical then attempted to show the bills were paid by the health insurer for Clemons' wife, after some period of time had elapsed. I agree that testimony was getting pretty far afield and the trial court acted within its discretion in excluding it.

It is not clear that the supreme court, when it is faced with the issue, will hold that firing an employee who complains about a violation of the Wage Act cannot give rise to a retaliatory discharge action. The Wage Act provides:

> "Any employer *** who knowingly discharges or in any other manner knowingly discriminates against any employee because that employee has made a complaint to his employer *** that he or she has not been paid in accordance with the provisions of this Act *** is guilty, upon conviction, of a Class C misdemeanor." 820 ILCS 115/14(c) (West 1994).

In *Barr* the plaintiffs alleged various constitutional rights were violated when they were discharged for their activities in connection with a labor dispute. The supreme court contrasted those general allegations with *Kelsay*, where "the public policy of allowing injured workers to freely file workmen's compensation claims was clearly mandated by the legislative enactment of the Workmen's Compensation Act." *Barr v. Kelso-Burnett Co.*, 106 Ill. 2d 520, 525-26, 478 N.E.2d 1354, 1356 (1985). In the present case, the legislature has clearly indicated that it is contrary to the public policy of the state to discharge workers who complain about violations of the Wage Act. *Abrams v. Echlin Corp.*, 174 Ill. App. 3d 434, 528 N.E.2d 429 (1988), did not hold that violations of the Wage Act may never be the basis of a retaliatory discharge action. *Abrams* affirmed the dismissal of the complaint before it because the plaintiff did not identify any provisions of the Wage Act that were violated when the employer indicated it would set off commissions paid on returned merchandise. *Abrams*, 174 Ill. App. 3d at 440, 528 N.E.2d at 433. Plaintiff's right to commissions was not dealt with by the Wage Act, but by a private agreement between the parties. *Kavanagh v. KLM Royal Dutch Airlines*, 566 F. Supp. 242 (N.D. Ill. 1983), is similar. In contrast to *Abrams* and *Kavanagh*, there is a section of the Wage Act that expressly prohibits what was done here. It could be argued that the dispute whether Clemons would receive two days' pay on August 4 or on August 11 was trivial, but Clemons was fired because of that dispute, according to Mechanical.

Complicated questions are presented by this case. The trial court dealt with those questions as they arose, without the advantages of reflection that we have. This was not a perfect trial, but the parties are not entitled to a perfect trial. I cannot say the trial court abused its discretion in its rulings or that the jury's decision was contrary to the manifest weight of the evidence. I would affirm.